## STANDARD LUMBER CO. et al. v. INTERSTATE TRUST CO. et al.
### No. 7737.

Circuit Court of Appeals, Fifth Circuit.
March 2, 1936.

Philip S. May, J. T. G. Crawford, and Francis P. Conroy, all of Jacksonville, Fla., and Jno. F. Harrell, of Live Oak, Fla., for appellants.

George M. Powell, Robert H. Anderson, and Martin H. Long, all of Jacksonville, Fla., for appellees.

Before SIBLEY, HUTCHESON, and WALKER, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was an adversary proceeding by bill in equity brought, under the statute 13 Elizabeth [1], against named defendants, to compel an accounting for assets alleged to have been fraudulently encumbered by and fraudulently conveyed to them. It was filed by the Interstate Trust & Banking Company on February 16, 1931, not as a class suit, but for its own benefit on a judgment for $26,409, it had obtained on November 26, 1930, against Standard Lumber Company. The bill made parties defendant the Standard Lumber Corporation, the Standard Lumber Company, their directors and principal stockholders, and the trustees and purchasers at foreclosure of the mortgage on all its properties the Standard Lumber Company had given Mrs. Sears on April 2, 1928. The bill alleged in detail a scheme to defraud entered into by Mrs. Sears, the principal stockholder of the Lumber Company, and the directors and officers of that company, to encumber all of its properties in her favor, and by judgments thereafter entered to acquire all of it in fraud of the company's creditors.

It was alleged that in pursuance of that scheme the mortgage had been executed, foreclosure proceedings had been begun and consummated, and the Standard Lumber Corporation had been formed to take over the properties foreclosed, with the result that in fraud of plaintiff the assets of Standard Lumber Company had been re-

---

[1] Comp.Gen.Laws Florida 1927, § 5771. "Fraudulent Conveyance is void."

moved from the reach of plaintiffs' claim and judgment. It was further alleged that Mrs. Sears had, as part of the same fraud, filed suit for and obtained judgment against the company on a series of bonds it had issued in 1914. The prayer was that Mrs. Sears and the Standard Lumber Corporation be required to account to plaintiff for all assets of the defendant, Standard Lumber Company, which had been conveyed in the foreclosure or for the value of the proceeds thereof. No claim was asserted or prayer made for attorneys' fees.

The defendants made full answers to the suit. They denied all the allegations of fraud, alleged that the mortgage had been given in good faith to secure in part advances which though past when the mortgage was executed, had been made on the assurance that the mortgage would be given, and in larger part to secure advances presently made upon the immediate faith of the mortgage.

As to the foreclosure proceedings and the judgment on the bonds, specifically denying that these proceedings were colorable or by consent, they alleged that they were truly had as adversary proceedings, and were not defended further than they were because the debts sued for were truly owed, and the securities relied on had been truly given.

Before the cause went to a decree in December, 1934, a great mass of testimony was taken. This showed that the Standard Lumber Company was a Sears corporation, in which Mr. Sears in his lifetime, and his widow Mrs. Anna L. Sears afterward, was, though not the only, the principal and dominant stockholder. It showed that throughout the whole of the company's existence it had been the custom and the practice of the Sears interest to finance it by advancing to it from time to time the moneys needed to carry on its business. In 1914 there was a bond issue of $1,200,000 of which $700,000 had been paid off, leaving in 1928 $500,000 owned by Mrs. Sears, still due and unpaid. By February 1, 1928, in addition to moneys due Mrs. Sears on the bond mortgage, there had become due her by the company on account of cash advanced during 1926, 1927, and 1928, $423,000, and on account of interest on moneys advanced and unpaid interest on the bonds, $122,607.65, a total of $545,607.65. It was then agreed that the company should give her a mortgage for these advances and the advances she was to make, and the preparation of the mortgage papers, actually executed on April 2, 1928, was begun. Thereafter she made the following advances: Between February 1 and March 17, 1928, $115,500; between April 9 and May 17, 1928, $761,000. Thus, the total principal indebtedness the mortgage secured was $1,432,117.65. In December, 1928, the interest being in default, the trustees in the mortgage brought a bill to foreclose. Defendants answered. There was a reference to a master, followed by a decree on February 25, 1929 for $1,545,213.21, and for foreclosure. On April 1, 1929, the trustees bid the property in by a credit on the judgment of $1,000,000, took a deficiency decree against the Standard Lumber Company for the difference, and on the same day transferred and assigned the properties to Standard Lumber Corporation which had been created to take them over after the sale. Since that corporation acquired the properties, Mrs. Sears, as the principal stockholder, has been advancing moneys to it to keep the business going, and receiving nothing in return from it, just as she had been doing while the Standard Lumber Company owned them. On February 11, 1929, Mrs. Sears obtained a judgment for $525,749 against the Lumber Company on her bonds, and recorded it in the public records. No testimony was offered showing or tending to show any actual fraud or that there had been any purpose, in connection with the advances to the Standard Lumber Company, the taking of the mortgage or its foreclosure, to hinder or delay the creditors of the company, or for any other purpose than to secure Mrs. Sears for the enormous sums she had advanced. On the contrary, the record shows that after the mortgage was taken the company paid out to its general unsecured creditors, $262,181.70. Considerable testimony was taken on the issue of the company's insolvency when the mortgage was given. This consisted of extracts from the books of the company, of the opinions of its officers, and of testimony as to an improvident contract for timber the company had made. There was no definite appraisement made of the properties, nor did any one testify as to their true value as of the date of the mortgage, the date of the foreclosure, the date of the filing of the suit, or the date of the trial. The other appellee, Southern Cypress Manufacturing Association, came into the suit by intervention on June 21, 1934, alleging the Standard Lumber Company's indebted-

ness to it prior to April 2, 1928, and that on May 18, 1934, it had obtained a judgment against it for $9,470.37, execution on which had been returned nulla bona. It adopted the general allegations and the prayer of the bill of complaint.

On September 21, 1934, the defendants, alleging that they had just learned the facts as to plaintiff's insolvency and the liquidation proceedings against it, and its having been removed as trustee, prayed leave to file a supplemental answer setting up these facts. The answer they tendered set out the following: (1) That the Interstate Trust & Banking Company was not the beneficial owner of the notes they had put in judgment, or of the judgment they sued on in this suit, but was trustee under a trust agreement executed by Mortgage & Securities Company which provided for the appointment of a successor trustee should Interstate become incapable of acting. (2) That the affairs of the mortgage company are now being administered in a receivership in Louisiana. (3) That the Interstate Company was on January 5, 1934, because of its insolvency, placed in liquidation in Louisiana and its affairs taken in charge by the banking commissioner of that state, whereby it became disabled to sue or be sued or act further in any way. (4) That on the 12th of June, 1934, the Interstate Company had been, by decree of a court of competent jurisdiction administering the affairs of the mortgage company, displaced as trustee and Myron Turfitt appointed substitute. (5) That he, as substitute trustee, was the only party entitled to prosecute this proceeding as plaintiff. It prayed that the cause be abated until the proper plaintiff should be made. These pleadings were supported by exhibits setting out the matters alleged. At the same time they asked leave to amend their original answers to correct the mistaken allegation in them that the 1914 mortgage had been released in full by alleging, as the fact was, that it was released only as to certain timber covered by it. These motions were denied. Thereafter, on December 7, 1934, the cause coming on to be heard, it was found and decreed (1) that the mortgage deed of trust was fraudulent, null, and void. (2) That the judgment on the bonds was fraudulent, null, and void. (3) That the mortgage deed of trust and the foreclosure proceedings, the deficiency decree and the judgment on the bonds Mrs. Sears had obtained be set aside as null and void. (4) That plaintiff and the intervener are entitled to assert and make good their claim against all the properties of the Standard Lumber Corporation in preference to all other claims and are entitled in addition as costs of this suit, to solicitors' and counsel fees.

The decree established the amounts due plaintiff and intervener on their claims, appointed a master to whom Mrs. Sears and the corporation must account as to all the assets of the company, adjudged that defendants pay an attorneys' fee to plaintiff's counsel of $15,000, and ordered that unless these sums were paid within ten days from the final decree, the whole property of the corporation be sold to make them. The result of this decree was to completely displace and subordinate the entire indebtedness of Mrs. Sears, amounting in round numbers to $2,000,000, including the sums presently advanced on the faith of the mortgage and that represented by the judgment on the bonds, to the claims of plaintiff and intervener. This appeal is from that decree.

Appellants, urging that on its merits the decree was wholly inequitable, and therefore erroneous as to them, put forward as fundamental and requiring reversal, the error of refusing leave to amend to plead plaintiff's want of capacity to further prosecute the suit.

■ We agree with appellants that this refusal was error, and that it requires reversal. It is too well settled to require argument that "if the exercise of powers incident to incorporation is suspended by the state of incorporation, this suspension will be effective in another state." Restatement, Conflict of Laws, § 158. c/f National Surety Co. v. Cobb (C.C.A.) 66 F.(2d) 323; Oklahoma Natural Gas Co. v. Oklahoma, 273 U.S. 257, 47 S.Ct. 391, 71 L.Ed. 634. By the laws of Louisiana as construed by its courts, the Interstate Trust & Banking Company was rendered, after January 5, 1934, incapable of proceeding further in the suit. Levy v. Union Indemnity Co. (La.App.) 146 So. 182; People's Bank & Trust Co. v. Louisiana State Rice Milling Co., 10 La.App. 401, 119 So. 779; Dolhonde v. Tangipahoa (La.App.) 153 So. 71.

■ For another reason the filing of the tendered answers should have been allowed, and if the facts alleged had been proven true, the suit should have been stayed. This is to be found in the allegations that the judgment Interstate sued on

was not owned by it beneficially, but was held as trustee, and that it had been removed as trustee and another appointed. For the error in refusing leave to file the tendered amendments, the decree is reversed, with directions to permit their filing, and if their allegations are sustained, to abate the further prosecution of the suit until proper parties are made.

The reversal on this ground makes it unnecessary to decide the other questions raised. In view of the fact, however, that most of the proceedings were had and testimony taken before the plaintiff's corporate suspension and removal as trustee took place, and that the successor trustee may elect, as the intervener did, to appear and adopt the proceedings his predecessor took, and particularly in view of the long-drawn-out character of the litigation and the propriety of expediting its coming to an end, we think it proper to briefly give general expression of our views on some of the other questions raised.

■ First, we think there was no warrant for the allowance of attorneys' fees in this proceeding. It was not a class suit to preserve a fund, but a strictly adversary one to hold defendants liable to satisfy plaintiffs out of assets in their hands. A mere incidental advantage resulting to a fund by reason of adverse litigation furnishes no basis for charging the attorneys' fees of the plaintiff against the fund. Huff v. Bidwell (C.C.A.) 195 F. 430.

The right to charge attorneys' fees on a fund arises where one, at his own expense, has maintained a successful suit for the preservation, protection, or increase of a common fund or common property. Trustees of Internal Improvement Fund v. Greenough, 105 U.S. 527, 26 L.Ed. 1157. It does not apply where, as here, a creditor prosecutes a suit for his own exclusive benefit.

In addition to the fundamental error of this allowance that the case was not a proper one for it, there was error also in allowing it as costs against defendants, instead of, if it could have been properly allowed, out of the fund preserved. The result of the allowance in this case has been to charge these fees not upon the fund, but upon defendants. There is no warrant in law for such charge. Hempstead v. Meadville Theological School, 286 Pa. 493, 134 A. 103, 49 A.L.R. 1149 and note.

■ It was error, too, to hold that the judgment Mrs. Sears got on her bonds was void. There are no facts in the record to impeach her claim on these bonds, or the judgment she got on them.

■ Neither is there basis in the record for the finding that the mortgage of April 2, 1928, was fraudulent, or that any of the foreclosure proceedings taken were. Indisputably, it was given in part, at least, for substantial sums of money presently advanced, and under the good-faith claim as to all the moneys, that they were made as present advances upon the agreement and in the faith that the mortgage would be given. We find nothing in the record to warrant a finding of fraud.

If there is any vice in the mortgage, it is not the vice of fraudulent procurement. It arises, if at all, out of the fact, if it be true, that Mrs. Sears, as controlling stockholder, obtained a preference by it which has resulted to the prejudice of those suing. Unless then, on a rehearing it be made to appear that the value of the properties mortgaged was substantially in excess of the amounts advanced on the faith of its giving, the mortgage and the subsequent foreclosure must be held valid, and defendant Lumber Corporation entitled to hold all the properties unaffected by plaintiffs' and intervener's claims. If, on the other hand, it be made on the rehearing to appear that the value of the properties was substantially in excess of the amounts advanced on the faith of the mortgage, if, in short, it appears that Mrs. Sears obtained a preference to some extent by the mortgage, to the extent of that preference plaintiffs and intervener would have a claim against the properties in the hands of the Lumber Corporation for their claims, to the extent, but only to the extent, that their claims as judgment creditors prime Mrs. Sears' claims as mortgage and judgment creditor. There is nothing in the statutes of Florida or in the general principles of law governing transactions between corporations and their stockholders which prevents a stockholder to whom the company is heavily indebted, from taking fair proceedings to collect his debt. These fair proceedings extend to and include the foreclosure of a valid mortgage. The relation of stockholder or director does not postpone a creditor of a corporation as to valid debts, or prevent their fair collection. It merely prevents the use of the position to gain an unfair advantage. Nothing in this record shows that this was done, except to the extent that it may be spelled out of it

that the value of the properties taken under the mortgage was substantially in excess of the moneys presently advanced on the faith of its giving, and that this excess resulted in a preference.

On a retrial all of the facts as to the value of the properties, the status and condition of the debts and claims against them and against the company should be canvassed and the rights of the parties determined on the equitable principles applicable to the facts as they may then be found to be.

The decree appealed from is reversed, and the cause is remanded for further proceedings not inconsistent herewith.

Reversed and remanded.