CONTINENTAL OIL CO. et al. v. HENDERSON et al.

No. 14594.

Court of Civil Appeals of Texas. Fort Worth.

May 19, 1944.

Rehearing Denied June 16, 1944.

Samuels, Brown, Herman & Brown, of Fort Worth, for appellants Texon Oil & Land Co. and Group No. 1 Oil Corporation.

G. R. Pate, John A. Braly, and Burney Braly, all of Fort Worth, for appellant Continental Oil Co.

James & Conner, of Fort Worth, for appellees.

BROWN, Justice.

Continental Oil Company owns a majority of the shares of capital stock of Texon Oil and Land Company, and the last named corporation owns a majority of the shares of capital stock of Group No. I Oil Corporation.

The three corporations were chartered by the State of Delaware.

W. H. Henderson and six other owners of shares of capital stock in the "Texon" corporation, and A. J. Gross, who owns one share of the capital stock of "Group No. I" corporation, brought a class suit, naming the three above mentioned corporations as defendants, and alleged the facts above set forth relating to the ownership and control of the capital stock of the said subsidiary corporations, and further alleged that Continental Oil Company, after acquiring direct control of the "Texon" corporation, acquired, indirectly, control of the "Group No. I" corporation, by reason of its absolute control of "Texon", and the control by "Texon" of "Group No. I", and that it caused to be elected as Directors of "Texon" and "Group No. I" five men, all of whom were and are officers and employees of Continental Oil Company.

The minority stockholders alleged that the Continental Oil Company owned four producing oil leases in what is familiarly known as the "East Texas Field", and that it, in the year 1941, sold them to the "Texon" and "Group No. I" companies for $1,-000,000 cash, and $1,500,000 payable out of ¼th of ⅞ths of the minerals produced, and that the purchasers were obligated under the sales contract to bear all of the expenses of operating the said leases.

It was further alleged that the properties were not worth such sales price but same was "greatly in excess of their value, and far more than could be obtained for same in a fair, arm's length deal with a willing purchaser".

Each of the buying companies paid Continental Oil Company $500,000 cash out of its assets, and the plaintiffs alleged that "the fair cash market value" of these leases, burdened as they were with the said large oil payment, was not more than $600,000; that Continental Oil Company, under the alleged facts and circumstances, "was in duty bound to act in the utmost good faith and fairness toward such subsidiary companies and their minority stockholders, in all its dealings with them and to protect and safeguard their best interests; but the said Continental Oil Company, in disregard and violation of its duties in the premises, imposed upon Texon and Group No. I the unfair, harsh and unequal bargain herein described, to its own exclusive benefit, advantage and profit, and to the great loss and disadvantage of Texon and Group No. I, and by reason of these facts said sale was and is fraudulent in law and void, and the same should be set aside by this court and the parties thereto should be restored to their former status as regards the property and money involved in the transaction".

The plaintiffs prayed for rescission, for an accounting and judgment against Continental Oil Company for $1,000,000, with legal interest, "less the net revenues received by Texon and Group No. I from the properties"; and in the alternative for damages in the sum of $400,000, being the difference between the price paid and the reasonable fair value of the properties, with legal interest on such sum. The plaintiffs also prayed for "their reasonable and necessary costs, expenses and attorney's fees" and that such "be ascertained, allowed and ordered paid in such manner and on such terms as to the court may seem just, etc.".

Before the cause on the merits was tried to a jury, the plaintiffs filed a motion reciting, in substance, that if they are unsuccessful in their efforts to recover judgment against Continental Oil Company on the merits they would not be entitled to recover expenses and attorney's fees from

any of the defendants, and they prayed that the trial court order a separate trial on the issues of expenses and attorney's fees, and a severance was then ordered.

On the verdict returned, the trial court rendered judgment of rescission and a money judgment against Continental Oil Company in favor of "Texon" and "Group No. I" companies in the sum of $885,596.22, with 6% interest from March 1, 1943, such sum being declared by the trial court to be "equivalent to one million ($1,000,000.-00) dollars, with six percent (6%) per annum interest thereon from December 31, 1941 (the date of the sale), to March 1, 1943, less the net revenues shown by the evidence to have been derived by defendants Texon Oil & Land Company and Group No. I Oil Corporation from the operation of the oil and gas leases above described between the dates of December 31, 1941, and the close of business on February 28, 1943."

This judgment was rendered by the trial court on April 9, 1943, and motions for a new trial were promptly filed by all defendants.

On April 19, 1943, "Texon" and "Group No. I" companies, acting through their duly authorized officers, contracted to sell the leases involved in this controversy to Stanolind Oil and Gas Company (a stranger to all parties concerned) for a cash consideration of $1,000,000, and the transaction was consummated on May 4, 1943, and the cash consideration was paid to the sellers.

All these facts were presented to the trial court in an amended motion for a new trial, and in reply to such motion the plaintiffs admitted the fact of such sale and they averred:

"It appears from the facts herein referred to that the sale to Stanolind Oil and Gas Company will be more beneficial to Texon Oil & Land Company and Group No. I Oil Corporation if they be allowed to reap the full benefit thereof than is the judgment of rescission and restitution procured for them by plaintiffs herein. It further appears that the defendants Texon Oil & Land Company and Group No. I Oil Corporation will not be able to reap the full benefit of said sale unless the judgment herein rendered be set aside.

"Plaintiffs have no desire, nor is it their purpose to assume any position contrary to the best interests of Texon Oil & Land Company and Group No. I Oil Corpora-

tion, and accordingly they concur in the motions to set aside the judgment, but they insist that in vacating said judgment the court should impose such terms and conditions as to it may seem just and equitable."

The "terms and conditions" contended for were that plaintiffs should recover all costs, all expenses incurred in the prosecution of the suit and attorney's fees for their counsel, because the defendants are asking that they be benefited by "a fortuitous ex-post facto event, arising after the rendition of the judgment"; that the plaintiffs brought their suit in good faith and should not, in equity, be deprived of their costs, expenses and attorney's fees.

With such record before it, the trial court made an order on the motions for a new trial which recites that, "excepting certain transactions occurring subsequent to the entry of judgment herein, which resulted in the sale of the property in controversy * * *, defendants have not exhibited good cause for new trial"; that the benefits under the said sale are greater than those accruing under the judgment, and such greater benefits cannot be obtained by the said companies unless the judgment is set aside; but that the suit was brought in good faith by the plaintiffs and same "was justified by the facts and circumstances exhibited at the trial, and has resulted in benefit to defendants Texon Oil & Land Company and Group No. I Oil Corporation and their majority stockholders as a class", and that if the judgment is vacated in order that these defendants might get the benefit of the sale of the properties, "it would be fair, just and equitable that, as a condition thereof, they pay the court costs herein and reimburse plaintiffs to the extent of plaintiffs' reasonable and necessary expenses incurred in the prosecution of this suit, and pay reasonable counsel fees for the services of plaintiffs' attorneys.

"It is therefore ordered and decreed that the judgment heretofore rendered in this case, on April 9, 1943, be and the same is hereby set aside and vacated, and that a new trial be granted defendants; on condition, however, that defendants Texon Oil and Land Company and Group No. I Oil Corporation shall, on or before June 21, 1943, pay to plaintiffs through Arthur Haddaway, their attorney of record, the sum of $1410.70 on account of the expenses paid and incurred by plaintiffs in the prose-

cution of this suit, and shall pay to Arthur Haddaway, T. R. James and George M. Conner, attorneys for plaintiffs, counsel fees in the sum of $5,500.00, in full discharge of all claims heretofore asserted by said parties with respect to such items, and shall pay the courts costs; otherwise it is ordered that the judgment herein shall remain in full force and effect, and that defendants' said motions for new trial shall be overruled."

The three defendant corporations excepted and gave notice of appeal.

The transcript contains more than 290 pages and the statement of facts and exhibits more than 1200 pages.

Appellants' brief, with its 32 points, covers more than 225 pages, and accompanying same is a written argument of some 28 pages.

Appellees' brief is of like size with that of appellants, and contains 26 points, and we were advised by appellees, when the case was argued, that they reserved the right to reply to appellants' written argument. This too has been filed.

We believe that no useful purpose may be had in an attempt to discuss and analyze all of the points and assignments of error presented, and our position will be set forth as briefly as possible.

Appellants' second point, to the effect that the trial court should have granted the amended motions for a new trial unconditionally, in order to preserve to the defendants the benefits and profits arising from the sale of the properties in question, we believe is well taken.

The trial court had full control of the judgment theretofore rendered and was vested with the authority and power to vacate the judgment if and when it appeared to be for the best interests of these corporations.

The new evidence brought to the attention of the trial court did not exist when the cause was tried but arose shortly after the trial, and it was of such a nature that it compelled a vacation of the judgment, in this case. Mitchell v. Bass, 26 Tex. 372.

Plaintiffs seek, through a court of equity, to bring about a rescission of the sale of these oil and gas leases by defendant Continental Oil Company to defendants "Texon" company and "Group No. I" company, on the theory that the stockholders of the two last named companies have been financially injured through a sale that was inequitable, unjust and unfair.

The only theory on which the plaintiffs could recover the expenses they have incurred and a reasonable attorney's fee must be bottomed on the fact that, by their suit, they have secured benefits to the stockholders of the corporations of such magnitude that these benefits warrant a judgment for such expenses and attorney's fees. The plaintiffs recognized this equitable rule and made their motion for a severance of issues in order that they might first try out the suit for rescission and have definitely settled the fact of whether or not they have benefited these corporations by their suit.

The plaintiffs sought no relief other than through the pleadings detailed above, and it cannot be said that, at any time since the suit was brought, the officers in charge of the business and affairs of the "Texon" company and the "Group No. I" company did not have the right to sell the leases in question to any purchaser at and for an advantageous sales price.

The plaintiffs recognize such right and make no effort to prevent the carrying out of this right by these companies, and recognizing the fact that the sale as made puts these corporations in a better financial position than they were given by the judgment of the trial court, these plaintiffs joined in the motions made by the defendants for a new trial and a vacation of the judgment theretofore rendered, but urged that the judgment be granted on the terms and conditions heretofore discussed.

We believe that it was the manifest duty of the trial court, with its equity powers, sitting in an equitable proceeding, to set aside the judgment theretofore rendered and to grant a new trial, and, as we see this case, the vital question to be determined is whether or not the trial court had the power, or authority, to impose the terms and conditions that were incorporated in the order quoted above.

Appellees bottom their right to the imposition by the trial court of the terms and conditions made, on the provisions of Rule 320 of Rules of Civil Procedure. This Rule grew out of and supersedes Article 2232 of Texas Revised Civil Statutes, now repealed.

It is conceded that no case has been reported, in the published reports of cases

appealed in Texas, in which any such terms and conditions as those found in the instant suit were ever imposed or upheld; but appellees contend that the Rule is broad enough to cover the matters complained of here.

The Rule provides: "New trials may be granted and judgments set aside on motion for good cause, on such terms as the court shall direct."

We are of opinion that the holdings in Town v. Guergin, 93 Tex. 608, 57 S.W. 565; Fenn v. G., C. & S. F. Ry. Co., 76 Tex. 380, 13 S.W. 273, and similar holdings are not authority for the trial court to impose upon the defendants, in this case, the "conditions", or "terms" whereby they are required to reimburse the plaintiffs for the expenses to which plaintiffs were put in the bringing and prosecution of the suit, and to pay plaintiffs' attorneys the fee that was fixed by the trial court upon presentation and hearing of the motions for a new trial.

We do not believe that the old statute, out of which Rule 320 grew, or said rule, ever was intended to give the trial court the authority or power that was exercised in this case.

When the motions for a new trial were heard, the plaintiffs introduced an itemized list of "items of expense" paid by attorneys James and Conner and by attorney Arthur Haddaway.

In the James and Conner list appear items covering expenses of trips made by attorneys to "East Texas", to Ponca City, Oklahoma, long distance telephone calls, and "checks" given to a witness, S. A. Cochran, for "witness fee and expenses", $125, and to witness J. L. Tillery "witness services", $100; and among the items shown in attorney Haddaway's list are found, "log service" of wells, charges for maps, charges for a certified copy of the assignment of the leases in controversy, "long distance calls", trips to Longview and Tyler, Texas, and to Ponca City, Oklahoma, "photostats" and a check to witness, S. A. Cochran, $125, and one to witness, David Donoghue, $500.

All of the items in this "Exhibit B", found at pages 1196 and 1197 (Vol. IV, Statement of Facts), aggregate $1210.70.

No evidence was attempted to be introduced on the issue of the amount of attorney's fees that would be reasonable, in this case.

There has never been a trial of the severed cause of action and the issues relating to the right to recover expenses and attorney's fees and the amount thereof have never been tried except in the manner detailed above, at the hearing of the motions for a new trial.

■ We hold that in this case and in the light of the record that was before the trial court, and is now before us, the trial court was without authority to impose upon the defendants the terms and conditions that were imposed, as shown in the court's order, and of which complaint is here made.

It is clear that the issue in plaintiffs' suit and their cause of action growing out of the sale of the leases became moot between the date of the rendition of the judgment of the trial court and the date of the hearing on the motions for a new trial.

The trial court erred in not granting the motions for a new trial and in not dismissing plaintiffs' suit for rescission.

We do not intend to say here that when the trial court sustains the motions for a new trial and dismisses the cause of action, the trial court will not have the authority to render such judgment as to the costs incurred in the trial court as may seem just and equitable, in the court's discretion.

The judgment of the trial court is reversed and judgment is here rendered directing the trial court to grant the defendants' motions for a new trial, set aside the judgment heretofore rendered by the trial court and dismiss the plaintiffs' suit for rescission.

■ All costs of appeal are taxed against appellees. Freeman v. Burrows et al., Tex.Sup., 171 S.W.2d 863.

We pretermit discussing or ruling upon any other point, or assignment of error, raised by appellants, deeming such action unnecessary in the light of this record.

Reversed and remanded with instructions.