## CANNON et al. v. PARKER et al.

No. 11382.

Circuit Court of Appeals, Fifth Circuit.

Dec. 19, 1945.

Rehearing Denied Jan. 18, 1946.

WALLER, Circuit Judge, dissenting.

J. N. Saye, of Longview, Tex., and A. H. Waldrop, of Henderson, Tex., for appellants.

Harvey Harris, J. Walter Friberg, and T. R. Boone, all of Wichita Falls, Tex., for appellees.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

The sole question on this appeal is whether the District Judge had authority to allow an attorney's fees of $3,500 in favor of the appellees, plaintiffs below, against the assets of the ten corporate appellants in the hands of a receiver. The amount of the allowance is not contested. The specification of errors asserts (1) that appellants' motion to dismiss the suit for want of federal jurisdiction; and (2) for failure to state a claim authorizing any relief, should have been sustained; and (3) the attorney's fee for plaintiffs could not be allowed because the suit was not in behalf of the corporations; and (4) no judgment was obtained of benefit to them.

We have no brief for appellees, and the judge in his decree did not state the grounds for allowing the fee, nor have we the evidence on which he acted. We must take the allowance as correct unless the record we have demonstrates its incorrectness.

1. The complaint showed that the appellees, the Parkers, were prior to May 21, 1938, the equal owners of certain stock in the ten corporate appellants, and on that date sold it to appellant Cannon for $1,600,000, for which his notes were given payable $100,000 principal each year and interest monthly at 3%. Seventy-five percent of the entire stock of each corporation indorsed in blank was deposited in a bank as security for the notes, with an agreement as to the disposition of the dividends on it, to the general effect that nine-tenths would be applied so far as needed in payment of the notes and the overplus invested in stocks or bonds to be also deposited as security. $300,000 of these notes were transferred to others before the suit was filed and the transferees were not parties to this suit. The complaint alleged further that Cannon had joined with himself appellants Garnett and Roberts, who together held all the stock (75% being under pledge as above stated) and they were respectively President, Treasurer and Secretary of each corporation and the board of directors of each; and in conspiracy together were dissipating the corporate assets by selling them, by using the dividends otherwise than as agreed, and by making additional personal withdrawals which at the filing of the complaint on May 8, 1943, exceeded $1,500,000; so that the corporations were about to be stripped of their assets. A full and complete audit and account was sought, and a receiver for the conduct of the business if necessary, it being alleged that since the three individual defendants controlled the corporations, and Cannon and Garnett were insolvent aside from their interests in the corporations, plaintiffs could have no relief through the corporations. Plaintiffs had requested a full statement from Cannon and Garnett, but only a dividend statement was furnished. An audit had been agreed to, but it had been hindered by defendants and was not full and complete. There was no allegation of default in the payment of the notes, nor election to accelerate their maturity, nor prayer for judgment on them. The claim was for the aid of the Court "for the protection of their rights as pledgees of the stock in the corporations named against respondent T. P. Cannon, together with the right to have all funds illegally or unlawfully withdrawn from said corporations repaid." A right was asserted also to recover $15,000 already paid out by plaintiffs for the auditing, as well as a reasonable attorney's fee for investigating and bringing this action, to be charged against Cannon and also against said corporations. The prayers covered all these points.

We think it quite clear that federal jurisdiction is shown. There is diversity of citizenship. The amount involved exceeds $3,000. A judgment for $15,000 auditing expense and an attorney's fee is asked. While no judgment is sought on the notes, the protection of a security apparently valued at more than a million dollars is sought and the return of $1,500,000 alleged to have been diverted from the corporations whose stock constituted the security. The value of a right sought to be protected often constitutes the measure of the amount involved for jurisdictional purposes.

■ 2. No great argument is needed to show that a good claim for relief in equity is alleged. Corporate officers, while not technical trustees, are fiduciaries, and those interested in corporate assets may seek the protection of them in equity against the unfaithfulness of the officers when no other remedy is available. Irrespective of the claim to recover a judgment for auditing costs and attorney's fees, there is equity in the complaint.

3. It is not clearly true that the suit was not in behalf of the corporations, as separate legal entities, as well as in behalf of plaintiffs. As above quoted, plaintiffs as pledgees of stock were seeking to have improper withdrawals of corporate assets restored after a full audit should determine them, and to take the assets from the unfaithful officers and protect them by a receiver if found necessary. The court authorized a further audit, which was quite extensive and cost $7,942.50 which was by an interlocutory decree ordered to be paid by plaintiffs by reason of an agreement made by them. It was further decreed that the complaint was filed in good faith; that the individual defendants had not properly dealt with the dividends; and that excessive withdrawals had been made and charged on the books, but without fraud. A receiver was denied, but the officers were enjoined from making further withdrawals beyond their dividends and salaries, or any sales of property save oil and gas products without approval of the court. The cause was kept open for further proceedings, including the matter of attorney's fee for plaintiffs. Semiannual reports to the court were required to be made of the handling of the affairs of the corporations. Six months later another interlocutory decree on supplementary pleadings was made to the effect that since the former decree plaintiffs had agreed to accept payment of principal and accrued interest on their notes, but had since repudiated the agreement; that other persons who held by transfer before the suit some of the series of notes had filed suit on them for a receiver in a State court, and that it was necessary for the District Court to appoint a receiver to protect its jurisdiction over the corporations. The previous denial of a receivership was set aside, and Cannon himself was made receiver for the ten corporations. The issue as to plaintiffs' claim for attorney's fees was again left open. Five months afterwards the receiver made a final report, to the effect that the plaintiffs in the District

Court and in the State court had come to a full settlement whereby they were to be paid principal and accrued interest, and that arrangements had been made to borrow the money, and proper action by the corporations had been had under order of the court, and he presented his claim for expenses totalling $1,593, mostly attorney's fees, he claiming no compensation beyond his salary from the corporations. The judge made fact-findings which included some that Cannon had withdrawn from the corporations before the complaint was filed $234,056 in addition to his dividends and salary, and Roberts $121,291, and Garnett $72,126 in addition to their dividends and salaries; and that plaintiffs' audit before the suit and that during it had cost between $21,000 and $25,000 which they had paid; and that the assets of the ten corporations, according to the auditor's report, exceeded $3,000,000. The judge allowed the receiver's expense bill; and the contested attorney's fee for plaintiffs in an amount of $3,500, all as a charge against the properties, which the receiver was ordered to return to the corporations; and the case was otherwise ended.

■ The suit was for the protection of the corporations in at least two respects. It sought to establish a liability to them by their officers of $1,500,000 for withdrawals, and did establish a total of $427,472, and stopped further withdrawals. It was also the vehicle at last of protecting the assets from a State receivership which in all probability would have cost much more than that in the District Court.

■ 4. The fact that no decree was entered against the individual defendants in favor of the corporations is probably due to the paying of plaintiffs' claim by the settlement in which the corporations participated. The question of this fee was excluded from the settlement. Purchasing or paying off the claims of those who procure protection or benefit to assets brought into the hands of a court of equity does not destroy the right of plaintiffs' attorneys to their fee. Central R. R. & Banking Co. v. Pettus, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed 915. Nor does it destroy a plaintiff's right where he has paid his attorney and retains his claim thereto as here That this case, though its circumstances are unusual, could be regarded by the district judge as one within the principle of charging assets brought into a court of equity for their protection with a reasonable part of the plaintiff's cost in do-

ing so, will appear from a careful reading of Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157, and Sprague v. Ticonic Bank, 307 U.S. 161, at pages 166 and 167, 59 S.Ct. 777, 83 L.Ed. 1184.

In view of the vigorous dissenting opinion filed, it is perhaps well to correct some statements in it which we think are misconceptions of the case. The appellees were not creditors of the ten corporations, but of Cannon. Their relationship to the corporations was solely that of stockholders by indorsement and pledge by Cannon of shares of the capital stock. Nor were they suing Cannot to collect their debt, which was not in default. They had a long term investment drawing monthly interest which they wished to preserve. Their aim was to maintain the integrity of the corporate assets, and restore what had been misapplied. This necessarily would benefit the corporations and all stockholders. In like case with themselves especially was the "Jimmie and LaWanda Rhea Parker Trust," as is alleged in the petition, and it was not made party, as is alleged, because it was not desired to involve it in the expenses and costs of the proposed audit and receivership. The appellees paid all the costs of the auditing, over $20,000, and attorney's fees in an amount not appearing in the record. Evidently the $3,500 attorney's fee awarded them is only a fraction of the whole. When the audit established that the individual appellants were, as appellees contended, looting the corporations, and were of relatively slight means themselves, but the court denied a receiver, the trustees of the above mentioned trust, one appellee being one of them, sought a receiver in the State courts. The federal judge, foreseeing what would probably result, arranged a receivership of his own. His receivership cost only $1,593 plus the $3,500 allowed appellees for attorney's fees. The audit disclosed corporate assets of about $3,000,000. Judicial experience authorizes us to conclude that a receivership elsewhere would probably have been much more costly.

■ It does not appear who the creditors of the corporations were, nor the amount of their debts. The appellees were not their creditors, but were interested as stockholders. The corporations were found to be still solvent. But it was adjudged that $427,472 had been irregularly taken from their assets. If it was not restored by the individual appellants in the general settlement of the litigation, the corporations are in position by a simple suit to collect it. The absence of a judgment of restoration in the final decree in this case suggests that it was repaid or secured in the settlement. Certain it is that the audit was needed, and resulted in putting the business of the corporations on a much better footing. Appellees were required to pay for it because they had offered to. They did not get what they sought, which was the safety of a long term investment, but waived future interest and took the principal as a compromise, retaining expressly their claim to be reimbursed for attorney's fees. We find no want of authority nor abuse of discretion in the very small award made by the judge.

Judgment affirmed.

WALLER, Circuit Judge (dissenting).

Attorneys' fees are taxable as costs only:

(1) When there is a contract providing for the payment of attorneys' fees;

(2) When there is a statute providing for the payment of attorneys' fees; or

(3) When a litigant, as a result of a suit, has preserved the assets of a debtor for the creditors or otherwise benefited the creditors to the extent that equity should require that the assets be charged with a portion of the costs and expenses of the litigation that conferred such benefits.

"In the absence of a valid and applicable statute, agreement, or stipulation expressly authorizing the allowance or taxation of attorney's fees as costs, they are not allowable or taxable as costs and are not included within the word 'costs,' as used in a statute, and are not included within word 'costs' as used in decree, or stipulation. Inasmuch as statutes authorizing the allowance of attorney's fees as costs are usually confined to designated classes of actions or proceedings, it is sometimes stated that generally or ordinarily, or in an ordinary civil action or suit, or even in special proceedings, attorney's fees are not taxable as costs. The general rule obtains in a court of law; and it is sometimes stated, that it applies equally in courts of law and in courts of equity. Even though a court of equity is deemed to have power to award counsel fees in its discretion, in an appropriate situation, and may properly do so where a party has, at his own expense, maintained a successful suit for the preservation, protection, or increase of a common fund or, at his own expense, has created or brought into court a fund in which others may share, or where a

suit charging fraud and misconduct is vexatious and oppressive and without any basis, nevertheless, an allowance of counsel fees by a court of equity is appropriate only in an exceptional case and for dominating reasons of justice and is frequently refused, especially in ordinary adversary proceedings, the denial being placed sometimes on the ground of want of power or authority and sometimes on the ground of policy or settled practice." 20 C.J.S., Costs, § 218.

In 14 Am.Jur. § 63, p. 38, it is said: ·

"The right to recover attorneys' fees from one's opponent in litigation as a part of the costs thereof does not exist at common law. Such an item of expense is not allowable in the absence of a statute or of some agreement expressly authorizing the taxing of attorneys' fees in addition to the ordinary statutory costs. * * *"

"The term 'costs' or 'expenses' as used in a statute is not understood ordinarily to include attorneys' fees. Generally, it is held that attorneys' fees are not included within a contractual provision for the payment of 'expenses.'"

In § 70, p. 45, of the same volume of Am. Jur., it is said:

"In the absence of statutory authorization, an attorney's fee will not ordinarily be allowed in an equitable action. Unless there is some agreement or stipulation between the parties imposing an obligation for the payment of such fees, the fact that the 'costs' specified in a statute may be allowed to either party in the discretion of the court does not authorize it to award an attorney's fee in addition to the costs, where an allowance of such fee is not expressly authorized by statute. * * * It is to be noted, however, that a court of equity may properly make an allowance of reasonable attorneys' fees out of *a common fund or common property created or preserved for the benefit of all the common owners* through the efforts of one of such owners. * * *" (Emphasis added.)

In § 74, p. 47, of the same work, the principle above stated is reiterated, but in this paragraph there is also the following statement:

"The allowance of counsel fees from a fund is capable of great abuse and should be exercised with the most jealous caution in regard to the rights of litigants, lest thereby the administration of justice is brought into reproach. * * *"

In § 75 of the same volume, p. 48, there is this statement:

"In order that an attorney may be entitled to compensation out of a common fund, his services must have aided in creating, preserving, or protecting the fund; and the fact that the other members of the class were represented by their own counsel has in some cases been treated as a strong or fatal objection to the allowance of counsel fees out of the common fund. It is also essential that the services prove fruitful to the general class. The mere fact that a complainant seeking an allowance of attorneys' fees may have been successful in the proceedings undertaken in behalf of the general class does not entitle him to an allowance, for it does not follow that the estate is benefited. In other words, if no actual benefit accrues from the services rendered, there can be no allowance therefor from the common fund.

"A mere incidental advantage resulting to a fund by reason of adverse litigation furnishes no basis for charging the attorneys' fees of the plaintiff against the fund. The right to charge a fund with costs and expenses depends upon whether the litigation in which the costs and expenses were incurred was in the promotion of the interest of those eventually found to be entitled to the fund."

" * * * The rule is that there can be no allowance *if the interests of the party* claiming an allowance of counsel fees from a fund brought into court *are antagonistic to those entitled to it,* even though the services may have benefited them. * * *" (Emphasis added.)

The law in Texas as stated in 11 Tex. Jur., § 44, p. 302, is in accord with the general rule:

" * * * a litigant is not liable to his adversary for any sum expended by the latter as attorneys' fees, except in those cases where the legislature has otherwise provided by statutory enactment. * * *

"As a general rule, in the absence of statutory provision, attorneys' fees are not recoverable as a part of the costs unless by virtue of a contractual provision relating thereto. Where the contract so provides, attorneys' fees may be allowed as a part of the recovery,—as in the case of an action on a note, or contract of sale."

In Continental Oil Co. et al. v. Henderson et al., Tex.Civ.App., 180 S.W.2d 998, the first headnote states:

*"Stockholders,* in *class suit* against corporations to set aside purchases of oil leases by corporations, were entitled to expenses incurred by stockholders and a reasonable attorney's fee *only on ground* that plaintiffs had secured benefits to *stockholders* of such magnitude warranting a judgment for the expenses and fee." (Emphasis added.)

In Cameron & Co. v. Amer. Surety Co. of N. Y., Tex.Com.App., 55 S.W.2d 1032, 1035, it was said:

"It is settled law in this state that, unless provided for by statute or by contract between the parties, attorneys' fees incurred by a party to litigation are not recoverable against his adversary either in an action in tort or a suit upon a contract."

See also Pacific Mut. Life Ins. Co. of Cal. v. Berryhill, Tex.Civ.App., 69 S.W.2d 784.

This rule has also been uniformly applied by this Court.

In New York Cent. & H. R. R. Co. v. Bank of Holly Springs, 5 Cir., 195 F. 456, 461, this Court said:

" * * * The general rule, subject to some exceptions in which the case at bar is not included, requires each party to the litigation to pay his own counsel fees. * * * the Supreme Court, speaking through Mr. Justice Swayne, in Oelrichs v. Spain, 15 Wall. [211,] 231, 21 L.Ed. 43, observed:

" 'In equity cases, when there is no injunction bond, only the taxable costs are allowed to the complainants. The same rule is applied to the defendant, however unjust the litigation on the other side, and however large the expensa litis to which he may have been subjected. The parties in this respect are upon a footing of equality. * * * When both client and counsel know that the fees are to be paid by the other party, there is danger of abuse. * * * We think the principle of disallowance rests upon a solid foundation, and that the opposite rule is forbidden by the analogies of the law and sound public policy.' "

This Court in Farmers' Loan & Trust Co. v. Green, 5 Cir., 79 F. 222, 225, in a case arising in Texas, stated:

" * * * we know of no principle of law or of equity which authorizes the court to tax as a part of the costs the counsel fees and disbursements of the successful party in the litigation."

The Supreme Court held that costs did not include attorneys' fees in the following cases: Missouri State Life Ins. Co. v. Jones, 290 U.S. 199, 54 S.Ct. 133, 78 L. Ed. 267; Kansas City Southern R. Co. v. Guardian Trust Co., 281 U.S. 1, 50 S.Ct. 194, 74 L.Ed. 659; People of Sioux County v. National Surety Co., 276 U.S. 238, 48 S. Ct. 239, 72 L.Ed. 547.

In the instant case we have no contract for the payment of attorneys' fee to the complainants. We have no statute, such as the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., requiring payment of attorneys' fee to the plaintiffs. The sole question, therefore, is whether or not this adversary proceeding, brought by the appellees for their own benefit, indirectly has benefited some of the defendant corporations by virtue of the fact that certain nefarious practices, injurious to creditors, by some of the defendants, who were the sole officers and stockholders of those corporate defendants, apparently have been voluntarily discontinued. There was no decree ordering such discontinuance.

The only creditors before the Court in the case were the appellees. They did not file a creditors' bill. They did not invite other creditors to come in. They took no judgment that required the payment of any funds into Court or to any creditor. They took no judgment that vouchsafed to any creditor any benefits whatsoever. They looked after themselves only to the extent that they and their privies (who had a separate suit pending in the state court) got paid in full in excess of $1,000,000 before it became due.

The defendants were the ten corporations, and three individuals who owned all of the stock, and were all of the officers, of the ten corporations. The basis of the complaint was that the individual defendants, as officers of the corporations, were pillaging the corporations and depreciating the security of the plaintiffs. The only other creditors of the defendants, according to the complaint, were the trustees of the "Jimmie and LaWanda Rhea Parker Trust," a trust estate for members of one of the plaintiffs' family to which the plaintiffs had assigned and transferred a portion of defendants' notes, but plaintiffs were not interested enough in protecting those trusts to make the trustees of that trust estate parties to the suit or to invite them to come in. Plaintiffs were looking after their own.

It is noteworthy, moreover, that the trustees of the said trust estate, who neither were made parties nor were invited to come

into the case, although one of the plaintiffs in the Federal Court was one of the trustees of the said trust estate, felt impelled to resort to the courts and filed suit in the state courts of Texas and there sought the appointment of a receiver of the property of the corporate defendants. It was to protect the jurisdiction of the Federal Court from the suit of one of the plaintiffs and his co-trustees—all being in privity with plaintiffs here—for the appointment of a receiver in the state court that the chief defendant, T. P. Cannon, was appointed receiver by the Federal Court. Although the trustees of said trust were paid in full the amount of the notes assigned by them to the trust estate, for aught that here appears the suit of the trustees in the state court brought about that payment rather than the suit of the plaintiffs in the present case.

The majority opinion says:

"The suit was for the protection of the corporations in at least two respects. It sought to establish a liability to them by their officers of $1,500,000 for withdrawals, and did establish a total of $427,472, and stopped further withdrawals. It was also the vehicle at last of protecting the assets from a State receivership which in all probability would have cost much more than that in the District Court."

But the majority opinion overlooks the fact that one of the plaintiffs here brought the suit in the state court seeking the appointment of a receiver, and the lower Court had to appoint one of the defendants as receiver to protect the assets from one of the plaintiffs. The majority seems to attach no importance to the fact that no decree was obtained requiring the officers to return the amount of their withdrawals to these corporations; nor was there any decree enjoining further withdrawals. The lower Court also found that the corporations were worth more at the time of the trial than they were at the date of the contract with plaintiffs, and evidently did not think that the withdrawers were entirely reprehensible, because it appointed the chief withdrawer as the receiver of these corporations under a bond of only $10,000. The fact that the Federal Court appointed a receiver to protect the litigation from a state receivership sought by one of the plaintiffs and by privies of the plaintiffs is too intangible to be classed as a benefit, even though the state suit had been brought by strangers. There is no presumption that a state receivership would have cost any more than did the Federal receivership.

The test of benefit is not what the complaint "sought to establish" but what the Court decreed.

The majority opinion seems to have overlooked the fact that this was an adversary suit against the ten corporations, wherein the plaintiffs made those corporations cough up over $1,000,000 before it became due. The protection that the plaintiffs sought to afford those corporations is somewhat similar to that which Hitler sought to give the small countries of Europe. After the plaintiffs got more than $1,000,000 out of this suit, they never even took the trouble to procure a judgment to enjoin the owners of these corporations from wrongfully withdrawing funds from the corporations.

It seems to be an innovation in the law for a court to allow an attorney's fee to a non-stock-owning plaintiff for the service of protecting the stockholders of a corporation from themselves.

Standard Lumber Co. v. Interstate Trust Co., 5 Cir., 82 F.2d 346, certiorari denied 299 U.S. 545, 57 S.Ct. 8, 81 L.Ed. 401, was not a class suit to preserve a fund, but was, as here, strictly adversary and prosecuted by a creditor for his exclusive benefit in an effort to hold defendants liable to satisfy plaintiffs out of assets in defendants' hands, and in that case this Court held that a mere incidental advantage resulting to a fund by reason of adverse litigation furnishes no basis for charging the attorneys' fees of plaintiffs against the fund.

This rule was followed in Lea v. Paterson Sav. Inst., 5 Cir., 142 F.2d 932, wherein it was sought to recover a fee by an attorney who claimed that his services to certain creditors had benefited all of the creditors. We held that attorneys' fees may be allowed in a case where the activities of an attorney have resulted in a benefit to a common fund or class, and these benefits have been accepted by the members of the class under circumstances supporting a finding of express or implied consent to the representation. The fee was not allowed in this case.

This decision was followed by this Court in Berry v. Root, 5 Cir., 148 F.2d 945.

I do not construe Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157, and Sprague v. Ticonic Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184, as being authority for anything

more than the announcement that, in cases where a definite benefit has been rendered by a litigant to other creditors, a court of equity may allow attorneys' fees as costs to such litigant so conferring such benefit. When the proceeding is definitely for the benefit of none other than the plaintiff, and when there is no contract or statutory provision therefor, there seems to be no law to allow a litigant to sue a defendant and then charge him an attorney's fee for some accidental or incidental benefit conferred upon the defendant—particularly when there is no showing of benefit to any creditor of such defendant but himself.