FEDERAL DEPOSIT INSURANCE COR-
PORATION, As Liquidating Agent for
Republic Bank of Kansas City, Plain-
tiff,

v.

Preston KERR, Presco Industries, Inc.,
d/b/a Ellett Brothers, Ray Adams,
Trustee for Ellett Brothers, Inc., Tusca-
rora Corporation, and Tuscarora Ac-
quisition Company No. 6, Inc., Defend-
ants,

and

Tuscarora Acquisition Company No. 7,
Inc., Chilton Ellett, Allan C. Watkins,
Trustee for the unsecured creditors of
Ellett Brothers, Inc., Bancamerica
Commercial Corporation, Eagle Oil &
Development, Inc., and Leroy G. Bailey,
Jr., and Robert D. Gorham, Jr., Addi-
tional Defendants.

No. C–C–85–74–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

June 13, 1986.

See also, D.C., Aug. 15, 1986.

Gaston H. Gage, Parker, Poe, Thompson, Bernstein, Gage & Preston, Charlotte, N.C., John S. Gordon, Gordon & Gordon, Kansas City, Mo., Jeffrey S. Hacker, Federal Deposit Ins. Corp., Dallas, Tex., for plaintiff.

Michael J. Mahoney, Baker & Hostetler, Cleveland, Ohio, Rebecca L. Jackson, Baker & Hostetler, Washington, D.C., Philip D. Lambeth, Harkey, Fletcher & Lambeth, Charlotte, N.C., Ray Adams, Overland Park, Kan., C. Richard Rayburn, Jr., Charlotte, N.C., Stuart N. Bennett, Carl A. Eklund, Roath & Brega, Denver, Colo., James Smith, Moore, Van Allen, Allen & Thigpen, Charlotte, N.C., Sheila Janicke, Smith, Gill, Fisher & Butts, Kansas City, Mo., Edgar Love, III, Kennedy, Covington, Lobdell & Hickman, Charlotte, N.C., Harriet E. Styler, Salt Lake City, Utah, for defendants.

## ORDER

ROBERT D. POTTER, Chief Judge.

### INTRODUCTION

THIS MATTER was heard before the undersigned on May 2, 1986 on Defendants' Motions to dismiss. Attorney Gaston Gage represented Plaintiff, Federal Deposit Insurance Corporation ("FDIC") bringing this action as the liquidating agent for the Republic Bank of Kansas City. Attorney Rick Rayburn represented Defendant Tuscarora Corporation d/b/a Tuscarora Investments ("Tuscarora"), a North Carolina corporation and wholly owned by Robert D. Gorham, Jr.; Defendant Tuscarora Acquisition Company No. 6, Inc. ("TAC 6"), a wholly owned subsidiary of Tuscarora; Defendant Tuscarora Acquisition Company No. 7, Inc. ("TAC 7"), a wholly owned subsidiary of TAC 6; Defendant Robert D. Gorham, Jr. ("Gorham"), a North Carolina resident; and Defendant Chilton Ellett ("Ellett"), a South Carolina resident until January 30, 1985. Attorneys Edgar Love and Mark Covington represented Defendant BancAmerica Commercial Corporation ("BACC"). Attorney Mark Ross represented Defendant Allan C. Watkins ("Watkins"), Trustee for the unsecured creditors of Ellett Brothers, Inc. and a Colorado resident.

This action arises out of a corporate transaction in which the Tuscarora Defendants purchased substantially all of the assets of Presco. The FDIC claims a security interest in 50 percent of the stock of Presco, and that the sale of the Presco assets to the Tuscarora Defendants has impaired the value of the Presco stock and that such sale was wrongful. The FDIC seeks injunctive relief, damages, and a judgment declaring a constructive trust over all Presco assets.

Defendants have filed various Motions to dismiss FDIC's Second Amended Complaint. Having considered the pleadings and the arguments of Defendants' Motions, the Court is of the opinion that Defendants' Motions should be denied.

### STATEMENT OF THE CASE

This action arose out of Defendant Preston Kerr's ("Kerr") failure to repay certain loans he obtained from Republic Bank of Kansas City ("Republic"). In obtaining these loans, Kerr gave Republic a security interest in his shares of Presco. The pledged shares represented 50 percent of the outstanding stock of Presco; the other 50 percent was held by Defendant Watkins as Trustee for the unsecured creditors of Ellett Brothers under an Amended Plan of Reorganization confirmed by a Colorado Bankruptcy Court.

The Tuscarora Defendants acquired the assets of Presco in late January of 1985 for the following consideration: (a) $3,900,000.00 in cash, (b) the assumption of a promissory note obligation in the amount of $2,100,000.00 (the maker of that note was Kerr), (c) the assumption of Presco's liabilities (with certain stated exceptions), and the assumption of Presco's obligations on certain industrial revenue bonds, and (d) certain additional payments by TAC 6 on Presco's behalf to Chilton Ellett, Presco's President, and to Allan Watkins, Trustee, in the aggregate amount of $290,000.00.

Also, there was a disbursement of $300,000.00 of the cash portion of the purchase price payable under the Asset Purchase Agreement dated January 30, 1985 to Allan C. Watkins in satisfaction of a portion of his obligations incurred in the purchase of the stock. The $2,100,000.00 note of Kerr to Watkins assumed by TAC 6 evidences a diversion of Presco's assets to Watkins and Kerr without any benefit to Presco, according to the FDIC.

The closing of this agreement took place in the office of Steven D. Hope, former attorney for Tuscarora Defendants, in Charlotte on January 30, 1985, and into the early morning hours of January 31. BACC was also present at the January 30 closing, according to the FDIC, for the purpose of receiving $1,715,000.00 of the consideration due Presco to satisfy a personal obligation of Kerr. There were other distributions without fair value of Presco assets reflected on Kerr's accounting, according to the FDIC, leaving virtually no marketable and liquid assets in Presco. Among the corporate documents at the closing were the Resolutions of Liquidation and Distribution of Presco.

The FDIC seeks to recover from the Defendants under claims based on alleged violations of the Federal Securities Laws, violation of RICO, and fraudulent corporate waste and liquidation. In addition, Plaintiff has asserted three derivative claims on behalf of Presco based on the same alleged Federal Securities violations, the same alleged fraudulent corporate waste and liquidation, and a theory of unjust enrichment. Plaintiff prays for compensatory damages, punitive damages, declaratory and injunctive relief, and rescission of all relevant transactions.

## RICO

The Defendants argue that the FDIC has failed to state a claim upon which relief can be granted under RICO, and therefore those claims should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that

the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *See also, Thompson v. Brotherhood of Sleeping Car Porters*, 316 F.2d 191 (4th Cir.1963). Further, the Complaint is construed in the light most favorable to the Plaintiff and its allegations are taken as true, *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969), and the motion to dismiss is generally viewed with disfavor. *Madison v. Purdy*, 410 F.2d 99 (5th Cir.1969).

Thus, the FDIC's RICO claim should not be dismissed for failure to state a claim unless it appears beyond doubt that the FDIC can prove no set of facts in support of its claim that: (1) there existed an enterprise which affected interstate commerce; (2) that the defendants were associated with the enterprise; (3) that the defendants participated in the conduct of the enterprise's affairs; and (4) that such participation was through a pattern of racketeering activity. *Sedima, S.P.R.L. v. Imrex Company, Inc.*, — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

The Defendants have made numerous assertions as to why the FDIC's RICO claim should be dismissed, including the failure to sufficiently allege an "enterprise," or that such an enterprise affects interstate commerce; failure to sufficiently allege a "pattern" of racketeering activity; and failure to sufficiently allege criminal activity constituting a predicate act.

Title 18 of the United States Code, Section 1962(c) provides

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

For purposes of this statute, "racketeering activity" includes any act indictable under 18 U.S.C. § 1341 (relating to mail

fraud), 18 U.S.C. § 1343 (relating to wire fraud), and securities fraud. 18 U.S.C. § 1961(1).

■■■■ The elements of an indictable offense under the federal mail and wire fraud statutes are: (1) the existence of a scheme to defraud, and (2) the use of the mails or interstate wires in furtherance of the fraudulent scheme. Reliance need not be proven. *See* 18 U.S.C. §§ 1341, 1343; *United States v. Murr,* 681 F.2d 246, 248 (4th Cir.1982) (the common element of mail fraud cases in that the accused attempted to use the mail as an instrument of his crime); and *United States v. Condolon,* 600 F.2d 7, 8 (4th Cir.1979) (must show a scheme to defraud and use of an interstate communication facility, such as a telephone, to execute that scheme). *See also, Vinden v. Graphics One,* 623 F.Supp. 1417 (C.D.Cal.1985). A "scheme to defraud" must seek to deprive one of property through fraudulent or deceptive means, such as material misrepresentation, concealment, breach of duty to disclose information or taking of bribes or kickbacks. *United States v. Pintar,* 630 F.2d 1270 (8th Cir.1980).

The elements of an offense for fraud in the purchase and sale of securities under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 of the Securities Exchange Commission are: (1) the use of any manipulative or deceptive device, (2) in connection with the purchase or sale of any security, and (3) the use of the mail or other instrumentality in interstate commerce. *Olympic Capital Corp. v. Newman,* 276 F.Supp. 646 (D.C.Cal.1967); 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b(3).

■■■■ With respect to pleading the RICO claim, the predicate offenses must be strictly construed. *I.S. Joseph, Inc. v. Lauritzen,* 751 F.2d 265, 267 (8th Cir.1984). Fed.R.Civ.P. 9(b) requires that "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Plaintiffs must allege with particularity the scheme to defraud and general allegations of such a scheme are not sufficient. *Sell-*

*ers v. General Motors Corp.,* 590 F.Supp. 502, 506 (E.D.Pa.1984). *See also, Rodman v. Grant Foundation,* 608 F.2d 64 (2d Cir. 1979) (one who alleges securities fraud must allege with some specificity acts constituting fraud). A basic outline of the scheme, not evidence, must be set out. *Banowitz v. State Exchange Bank,* 600 F.Supp. 1466, 1469 (N.D.Ill.1985). Conspiracy charges require particularity. *Kravetz v. Brukenfeld,* 591 F.Supp. 1383, 1388, 1387–88 (S.D.N.Y.1984). Generally, where multiple parties are involved, the roles of each must be carefully delineated; however collective allegations may be appropriate in some circumstances, such as where the multiple defendants are corporate insiders or partners. *Banowitz, supra* at 1469; *Kravetz, supra* at 1387. Further, where the information is peculiarly within the knowledge of the other party, less detail is required. *Rich-Taubman Associates v. Stamford Restaurant Operating Co., Inc.,* 587 F.Supp. 875, 880 (S.D.N.Y.1984); *Merrit v. Libby, McNeill & Libby,* 510 F.Supp. 366, 373 (S.D.N.Y.1981) (in securities fraud case plaintiffs are not required to set forth facts which, because no discovery has yet occurred, are in the exclusive possession of defendants). Finally, if the charges are insufficient to give defendants adequate notice of the alleged fraud to allow an adequate responsive pleading, then leave to amend is usually granted. *Mollen v. Sweetwater,* 619 F.Supp. 809, 819 (D.C.Col. 1985).

A "pattern" of racketeering activity "requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). "[T]wo isolated acts of racketeering activity do not constitute a pattern." *Sedima, supra,* —— U.S. at —— n. 14, 105 S.Ct. at 3285 n. 14. " 'The infiltration of legitimate business normally requires more than one "racketeering activity" and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern.' " *Id.* (quoting S.Rep. No. 91–817, p. 158 (1969) (emphasis original).

■ As long as more than one racketeering activity is sufficiently alleged, a "pattern" may exist even if the racketeering activities contemplate a single scheme. In its discussion of "pattern," neither RICO nor its legislative history refer to "pattern" in terms of "schemes." The statute refers to "acts," two or more of which must be "related" and in "continuity" to constitute a "pattern." *See Bank of Am. Nat'l Trust & Savings Ass'n v. Touche Ross & Co.*, 782 F.2d 966 (11th Cir.1986) (nine mailings and uses of wire over three year period in furtherance of a single scheme are sufficient); *R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350, 1355 (5th Cir.1985) (two acts of mail fraud in single scheme dealing with one transaction, if related, are sufficient under *Sedima* ).

An "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or *group of individuals associated in fact* although not a legal entity. 18 U.S.C. § 1961(4) (emphasis added). "Where persons associate 'in fact' for criminal purposes ... each person may be held liable under RICO for his, her or its participation in conducting the affairs of the association in fact through a pattern of racketeering activity." *Haroco v. Am. Nat'l Bk & Trust Co. of Chicago*, 747 F.2d 384, 401 (7th Cir.1984).

In the instant case, the Second Amended Complaint specifically sets forth the execution of the alleged fraudulent transaction and subsequent distribution of assets, the respective roles each of the Defendants played in the transaction, their alleged concealment of the transaction from the FDIC, and a basic outline of a scheme to defraud. The Second Amended Complaint does not set forth with particularity which Defendants used the mails or interstate wires, although it is hard to imagine how such a transaction could be carried out without the use of such interstate devices. Nor does the Second Amended Complaint set forth any facts which could form a basis for a violation of the Travel Act. The FDIC does claim with particularity that the Defendants conspired to conduct a pattern of racketeering activity through the affairs of the association in fact in that particularity under Fed.R.Civ.P. 9(b) requires time, place, and context.

■ Under the circumstances of this case, and in light of the fact that considerable discovery is yet to be conducted, this Court cannot say that it appears beyond doubt that the FDIC will be unable to prove any set of facts to support its RICO claim against these Defendants. However, the FDIC should further amend its Complaint to reflect which Defendants did what with respect to the commissions of the alleged predicate acts of mail fraud, wire fraud and securities fraud. There appears to be no set of facts which the FDIC can prove in support of its claim that the Defendants violated the Travel Act and that claim should be dismissed. Otherwise, the Court finds that the Defendants have been given notice of the alleged fraud sufficient to allow adequate responsive pleading and the RICO claims should not be dismissed.

### SECURITIES FRAUD

The FDIC also claims that the Defendants have committed fraud in the purchase and sale of securities in contravention of § 10(b) of the Securities Exchange Act of 1934 and Rule 10(b)–5 of the Securities Exchange Commission. This violation also serves as one of the predicate acts for the RICO claim. The Defendants argue that this claim should be dismissed because the FDIC has not and cannot plead the "purchase or sale of a security," which is an essential element of the claim, and because the claims are insufficient under Fed.R. Civ.P. 9(b). Defendants also argue that the FDIC cannot bring its 10b–5 claim as a derivative action under Fed.R.Civ.P. 23.1.

Rule 10b–5 seeks to prevent inequitable and unfair practices of securities exchange and to insure fairness and honesty in security transactions generally. *SEC v. Texas Gulf Sulpher Co.*, 401 F.2d 833 (2d Cir. 1968). The statute and rule should be broadly construed to effectuate their remedial purposes. *Tchereprin v. Knight*, 389

U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967).

The FDIC contends that as a pledgee of 50 percent of Presco stock, it had an equitable shareholder's interest in such stock which the Defendants rendered without marketable value due to their fraudulent transaction and, therefore, the "forced sale" exception to the purchase or sale rule applies to this case.

The Defendants' argument that the "forced seller" doctrine no longer constitutes grounds for 10b–5 standing is simply without merit. The United States Supreme Court, in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), did not refute the forced seller doctrine and lower courts have continued to apply the exception. *See, Alley v. Miramon*, 614 F.2d 1372, 1385–87 (5th Cir.1980).

■ The forced seller doctrine generally encompasses only those situations where the fundamental nature of a plaintiff's investment has been changed without an actual sale through circumstances beyond the plaintiff's control. *Crane Co. v. Westinghouse Air Brake Co.*, 419 F.2d 787 (2d Cir.1969); *Vine v. Beneficial Finance Co.*, 374 F.2d 627 (2d Cir.1967); *Coffee v. Permian Corp.*, 434 F.2d 383 (5th Cir.1970). Although a mere dilution in value of the plaintiff's investment is not sufficient for standing as a forced seller, something more than mere diminution in value may give rise to forced seller standing. *Alley v. Miramon, supra; Garner v. Pearson*, 374 F.Supp. 591 (M.D.Fla.1974).

In *Garner* the court held that plaintiffs, as liquidators of a bank, could sue as forced sellers where they alleged that as a result of the defendants' fraudulent scheme the assets of the bank had been plundered and were reduced to a mere claim for a portion of its remaining assets in the liquidation proceedings. The liquidators brought suit on behalf of the bank itself and its deposit-holders. In the instant case, the FDIC seeks recovery in its own right as a holder of collateral stock in Presco as well as on behalf of Presco. The FDIC is not a receiver or liquidator of Presco as the plaintiffs in *Garner* were of the failed bank which the defendants had fraudulently plundered. However, this does not necessarily mean that the FDIC is too far removed from the alleged fraudulent transaction to assert forced seller standing. The FDIC has cited no case where a pledgee of stock sought to invoke forced seller standing to recover for a fraudulent transaction which rendered its collateral interest in the stock worthless. Indeed, there appears to be no cases involving such a factual situation. Most of the cases reported involve corporate shareholders, not pledgees of collateral stock, as forced sellers. However, courts have also applied the doctrine to warrant holders, *Valente v. PepsiCo, Inc.*, 454 F.Supp. 1228 (D.C.Del.1978) (forced seller doctrine applied to nontendering warrant holders who were left with either the right to purchase shares in a nonexistent corporation or the right to receive cash), limited partners, *Engl v. Berg*, 511 F.Supp. 1146 (E.D.Pa. 1981) (limited partners held forced sellers where transaction transformed their interests in viable limited partnership with tangible assets to interests in a shell with merely illusory rights to receive mortgage proceeds), and liquidators of a bank, *Garner, supra*.

■ In *Vine v. Beneficial, supra*, the Second Circuit recognized the Plaintiff had standing to sue as a forced seller although he still held his certificates of ownership and had the option of exchanging his stock for an allegedly under-valued price. The court felt that to require plaintiff to exchange his stock would be a futile exercise. *See also, Houlihan v. Anderson-Stokes, Inc.*, 434 F.Supp. 1330 (D.C.D.C.1977) (plaintiff may assert forced seller standing without disposing of securities). If Kerr breached his duty to refrain from doing anything which might injure the value of the FDIC's collateral stock, as alleged, then he was also in breach of the security agreement entered into with the FDIC; and, had the FDIC known of the alleged fraudulent transaction and its full impact it

could have made a demand of Presco stock under the security agreement. Consequently, the Court concludes that the FDIC was at least an equitable owner of 50 percent of the Presco stock. To force the FDIC to exercise its rights under the security agreement and take ownership of the worthless Presco stock and then seek to exchange that stock for money as a condition to suit appears futile. Taking the FDIC's allegations as true that Presco has been substantially liquidated pursuant to a fraudulent scheme, its collateral stock interest has been reduced to a speculative claim for cash and the remedial nature of Rule 10b–5 would best be effectuated by granting the FDIC standing as a forced seller.

It is also worth noting that courts have frequently regarded the assets of a troubled corporation constituting a trust fund for the benefit of its creditors. 19 Am.Jur. 2d., *Corp.* § 1021. And N.C.Gen.Stat. § 55–55 provides that a derivative action "may be brought by a shareolder or holder of beneficial interest in shares of such coporation." Furthermore, courts have upheld the right of a pledgee to exercise the same rights as a minority stockholder. *See Cannon v. Parker,* 152 F.2d 706 (5th Cir. 1946); *Snyder v. Eagle Fruit Co.,* 75 F.2d 739 (8th Cir.1935).

This conclusion is further supported by legal authority which makes clear that a pledgee has standing under Rule 10b–5 for complaining of a fraudulent pledge transaction. *United States v. Gentile,* 530 F.2d 461 (2d Cir.1976), *cert. denied,* 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976); *Mallis v. Federal Deposit Insurance Corp.,* 568 F.2d 824 (2d Cir.) *cert. dismissed,* 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) reh'g denied, 436 U.S. 915, 98 S.Ct. 2259, 56 L.Ed.2d 416; and *Chemical Bank v. Authur Anderson & Co.,* 726 F.2d 930 (2d Cir.1984). Under these cases, a pledgee of stock may stand in the position of a purchaser and a pledge transaction may operate as a sale under 10b–5. *See also, United States v. Kendrick,* 692 F.2d 1262 (9th Cir.1982) (stockbroker's obtaining of loan by pledging se-

curities in margin accounts of his customers with lender was a sale within § 10(b)); *Rubin v. United States,* 449 F.2d 424 (1981) (a pledgor is a seller and a pledgee is a purchaser). The Court agrees with the FDIC that if a pledgee has standing under Rule 10b–5 for complaining of a fraudulent pledge transaction then he ought also to have standing as any other investment holder of stock to complain of a forced sale brought about by a fraudulent liquidation.

Derivative actions for 10b–5 violations may be brought by a shareholder on behalf of his corporation under Fed.R.Civ.P. 23.1. *Rekaut v. Desser,* 425 F.2d 872 (5th Cir. 1970). (FDIC's technical compliance with Rule 23.1 is discussed *infra.*) The FDIC is the liquidator of the Republic Bank of Kansas City and as such represents the interests of its depositors and creditors. As pledgee of 50 percent of Presco's stock, it seeks derivatively to protect the value of stock and preserve corporate assets of Presco which have been rendered worthless by the alleged fraudulent transactions in violation of Rule 10b–5. Because it is obvious that no other party is willing to act in protection of the corporate integrity of Presco and because of its collateral stock interest, the FDIC argues that it stands in the shoes of an equitable or minority shareholder who under Rule 23.1 may assert derivative standing. The FDIC cites *Green v. Hedenberg,* 159 Ill. 489, 42 N.E. 851 (1896) and *Cream City Mirror Plate Co. v. Donahoe,* 142 Wis. 651, 126 N.W. 44 (1910), for the proposition that a pledgee has the right to bring a derivative action for corporate waste. The cases of *deHaas v. Empire Petroleum Co.,* 435 F.2d 1223 (10th Cir.1970), *Hunt v. Cotton States Fertilizer Co.,* 145 F.2d 293 (5th Cir.), *cert. denied,* 324 U.S. 844, 65 S.Ct. 679, 89 L.Ed. 1406 (1944), and *Schupack v. Covelli,* 498 F.Supp. 704 (D.C.Pa.1980) also support the proposition that "an equitable owner of shares is entitled to maintain a derivative action." C. Wright, *Handbook of the Law of Federal Courts,* 73 (4th ed. 1983). *See also, Cannon v. Parker, supra,* and *Snyder v. Eagle Fruit Co., supra.*

It appears that the FDIC has never been a record shareholder of Presco because it has not sought to exercise its rights to take title to the collateralized stock under the security agreement with Kerr, which as already mentioned, would be a futile exercise anyway. Because Kerr is alleged to have breached his duty to refrain from doing anything which might injure the value of FDIC's collateral stock and therefore was in default on his debt to the FDIC under the security agreement, the FDIC could have made a demand of Presco stock. Consequently, this Court concludes that the FDIC was at least an equitable owner of the Presco stock whose interest was sufficient to satisfy the requirements of Rule 23.1.

With respect to pleading a fraudulent securities transaction with particularity, the Defendants argue that the FDIC's § 10(b) and 10b–5 claims should be dismissed under Fed.R.Civ.P. 9(b). Indeed, one who charges securities fraud must allege with some specificity acts constituting fraud. *Rodman v. Grant Foundation, supra.* The FDIC must allege specific transactions to state a claim under Rule 10b–5 with respect to manipulative or deceptive device in the purchase or sale of securities. *McLaughlin v. Campbell,* 410 F.Supp. 1321 (D.C.Mass.1976).

The Second Amended Complaint alleges in paragraphs one through 60 and 72 and 73 that Defendants Kerr, Watkins, Adams, TAC 6, TAC 7, Gorham, and Ellett participated in the fraudulent transaction of January 30 and 31, 1985, which amounted to a forced sale of Presco stock and was accomplished by fraudulent schemes, devices and statements. The Second Amended Complaint sets forth the respective roles of the Defendants in that scheme and their acts which constituted manipulative or deceptive practice with sufficient specificity to fairly apprise Defendants of the transactions complained of. *See, Dudley v. Southeastern Factor and Finance Corp.,* 446 F.2d 303 (5th Cir.1971), *cert. denied,* 404 U.S. 858, 92 S.Ct. 109, 30 L.Ed.2d 101 (1971). Defendants' Motion to dismiss the FDIC's § 10(b) and Rule 10b–5 claims for failure to comply with Fed.R.Civ.P. 9(b) should, therefore, be denied.

### JURISDICTION AND VENUE MATTERS

The Defendants concede that this Court has subject matter jurisdiction pursuant to 12 U.S.C. § 1819, 28 U.S.C. § 1331, 18 U.S.C. § 1964, and 15 U.S.C. § 78aa if the FDIC properly states a claim for relief under federal securities laws or RICO. Since the Court has concluded that the FDIC's RICO and securities fraud claims should not be dismissed at this point, the above-mentioned statutes properly confer subject matter jurisdiction upon this Court and Defendant's Motions to dismiss for lack of subject matter jurisdiction should be denied.

Defendants TAC 7 and Chilton Ellett argue that because TAC 7, a Delaware corporation, has its sole place of business in Chapin, South Carolina, and because Ellett, the president of TAC 7, resides and works only in South Carolina, there exist no personal jurisdiction over them. Their argument is without merit. A court may assert jurisdiction over a defendant if statutory law provides a ground and if the defendant has such minimum contacts with the State that it is fair to require him to defend there. The North Carolina Long-Arm Statute provides for jurisdiction over the person where there is an injury to person or property within or without the State which arises out of an act or omission within North Carolina by the defendant. N.C.Gen.Stat. § 1–75.4(3). The Defendants argue that the FDIC's claim arose in South Carolina, but the Court finds this argument unpersuasive in light of the allegations that the transaction complained of took place in Charlotte, North Carolina, that the $2,100,-000 note of Kerr to Watkins was assumed by TAC 7 in Charlotte, that the Pledge Agreement executed by TAC 7 and Asset Purchase Agreement executed by Ellett both recite that they will be governed and construed in accordance with North Carolina law and that the Defendants' own

accounting indicates that $190,000 was paid to Ellett in the closing at Charlotte. These actions go to the heart of the FDIC's claims and show that those claims arose here, not in South Carolina.

There is a clear mandate that the North Carolina Long-Arm Statute be given liberal construction, thereby favoring a finding of personal jurisdiction. *Vishay Intertechnology, Inc. v. Delta Int'l Corp.,* 696 F.2d 1062 (4th Cir.1982). Regardless of the statutory ground, a court cannot expand the permissible scope of state jurisdiction over nonresident parties beyond due process limitations. There must be a showing that the defendant has sufficient minimum contacts with North Carolina. *Speizman Knitting Mach. Co. v. Terrot Strickmaschinen,* 505 F.Supp. 200 (W.D.N.C. 1981). The criteria for determining whether minimum contacts exist include: (1) the quantity of contacts, (2) the nature of and quality of contacts, (3) the source and connection of the cause of action with those contacts, (4) the interests of the forum state and convenience, and (5) whether the defendant invoked the benefits and protections of the law of the forum state. *Southern Case, Inc. v. Management Recruiters Int'l., Inc.,* 544 F.Supp. 403 (E.D.N.C.1982); *Speizman, supra.* The casual presence or isolated activity of a defendant in the forum state are not enough to supply the minimum contacts. *Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc.,* 239 F.2d 502 (4th Cir.1956).

In this case, while the quantity of TAC 7's and Ellett's contacts has been insignificant, the nature and quality of their contacts and their connection with the cause of action are substantial. The interest of this forum in the litigation of lawsuits for fraudulent transactions of million dollar proportions which occurred here is certainly substantial. The convenience of litigation in this forum as opposed to a separate lawsuit in South Carolina is very insignificant. Most importantly, the Court believes TAC 7 and Ellett invoked the benefits and protections of the law of this forum by their actions as described above.

Consequently, the Court is of the opinion that both the statutory and due process requirements for asserting personal jurisdiction over TAC 7 and Ellett are satisfied. The Motion to dismiss with respect to those Defendants should therefore be denied.

With respect to the proper venue of this action, 28 U.S.C. § 1391(b) provides that a civil action not founded solely on diversity may be brought "in the judicial district where all defendants reside, or in which the claim arose." As discussed previously, the Court believes that the FDIC's claims arose out of the January 30, 1985 transaction in Charlotte, North Carolina. Thus, under § 1391(b), venue is proper in the Western District of North Carolina.

The Defendants have also argued that the FDIC's claims against the Tuscarora Defendants should be dismissed due to certain proceedings involving some of these parties in the Bankruptcy Court of Colorado. On March 25, 1983, Ellett Brothers, Inc. ("Ellett Brothers") filed a petition under Chapter 11 in the Bankruptcy Court of Colorado and is now operating as a debtor in possession. Watkins is the approved trustee for the unsecured creditors in that matter. On September 24, 1984, the Colorado Bankruptcy Court confirmed Ellett Brothers' Amended Plan of Reorganization. Article II of that Plan provides Presco and Kerr an option to purchase 250,000 shares transferred by Watkins to Presco. On January 10, 1985, Watkins filed an Application for authority to sell the 250,000 shares of Presco stock. The Application indicates that the unsecured creditors committee of Ellett Brothers voted unanimously to approve the sale to Kerr. On January 21, 1985, the Colorado Bankruptcy Court issued an order approving the sale. Watkins allegedly obtained from Kerr an affidavit that he was purchasing the 250,000 shares of Presco stock for his own account and not with a view to sell or distribute that stock. The order approving the sale included a provision retaining jurisdiction with respect to all controversies connected to the disposition of the trust property.

Defendants argue that since the transaction complained of was approved by the Colorado Bankruptcy Court and since that Court retained jurisdiction over controversies connected with the disposition of trust property, then the matter should be dismissed here. Defendants also argue that the FDIC's claims are a collateral attack upon the orders of the Colorado Bankruptcy Court; and, that under the principles of comity, the Western District of North Carolina should defer to the Colorado Bankruptcy Court in this "overlapping proceeding."

The Court disagrees with the Defendants' assertions and is of the opinion that the Colorado Bankruptcy proceedings do not require dismissal. In the first place, there is nothing to support the assertion that the Colorado Bankruptcy Court approved the January 30, 1985 transaction complained of. The Court only approved Watkins' sale of Presco stock to Kerr in exchange for cash and a note. It did not consider the series of transactions which immediately followed the sale and are alleged to have fraudulently stripped Presco of all its assets and render the FDIC's collateral stock interest worthless.

■ Collateral estoppel applies to preclude the relitigating of an issue that was actually litigated and determined by a valid and final judgment. 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4416 (1981). The actions which the FDIC complains of were not approved by the Colorado Bankruptcy Court and the doctrine of collateral estoppel is inapplicable to this case.

■ As discussed previously, jurisdiction for this case properly exists in this forum; this is not merely a dispute over property of Presco but also of alleged federal statutory violations which occurred here. Therefore, this Court does not feel that comity compels it to defer this proceeding to the Colorado Bankruptcy Court. As noted above, the claims here involve much more than the proceedings in Colorado.

CORPORATE WASTE AND MISMANAGEMENT, FRAUDULENT LIQUIDATION AND DISSOLUTION, FRAUDULENT TRANSFER OF CONTROL

The Defendants contend that the Second Amended Complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because it fails to state a claim for fraudulent corporate waste and liquidation. Specifically, the Defendants argue that the FDIC does not and cannot allege that the Defendants acted as directors, officers or shareholders of Presco or that they had any influence over the affairs of Presco or the alleged fraudulent transaction. Defendants further argue that the fraudulent corporate waste and liquidation claims should be dismissed because they are not stated with the requisite particularity under Fed.R. Civ.P. 9(b); that the FDIC lacks proper standing; that the FDIC does not and cannot allege that Defendants owed any duty to it; and that the allegations are insufficient to support a claim for punitive damages.

With respect to the issue of standing, the Court has already discussed the issue of the FDIC's standing as an equitable shareholder to sue both individually and derivatively for alleged 10b–5 violations. The same analysis applies to the corporate waste and fraudulent liquidation claims. Corporate directors and officers are fiduciaries to the corporation they manage and those interested in corporate assets may seek protection in equity against the misconduct of directors and officers, especially in cases which involves some element of fraud and deceit. *Cannon v. Parker, supra,* at 708 (5th Cir.1946); *Ford Motor Credit Co. v. Minges,* 473 F.2d 918 (4th Cir.1973). Where the officers of a corporation misappropriate its assets, they may be held liable as trustees for the corporate debts. *Cafritz v. Corporation Audit Co.,* 60 F.Supp. 627 (D.C.D.C.1945); *McIver v. Young Hardware Co.,* 144 N.C. 478, 57 S.E. 169 (1907). Moreover, the rights of a pledgee of corporate stock are essentially the same as those of an owner of stock.

He has a significant enough interest to be heard in equity for the protection and preservation of the assets and property of the corporation since a loss of corporate assets inevitably results in a depreciation of the value of the collateral stock and consequent impairment of his security. *Re Pittsburgh & L.E.R. Co. Secur. & Antitrust Litigation,* 543 F.2d 1058 (3d Cir. 1976); *Lowell Wiper Supply Co. v. Helen Shop, Inc.,* 235 F.Supp. 640 (S.D.N.Y.1964); *Cream City Mirror Plate Co. v. Donahue, supra.* And if assets of a corporation have been misappropriated to persons other than bona fide purchasers, then equity can reach that property. *Curran v. Arkansas,* 15 How. 304, 56 U.S. 304, 14 L.Ed. 705 (1853); *Spokane Merchants' Ass'n v. Lobe,* 13 Wash.App. 68, 533 P.2d 133 (1975).

In this case, Kerr breached his duty under the security agreement with the FDIC to refrain from doing anything which might injure the value of the pledged stock and such misconduct conferred upon the FDIC the right to demand the stock. However, because the transaction occurred without the FDIC's knowledge, such a demand would have been a futile exercise because the stock had already been rendered worthless. In any event, the FDIC is at least an equitable owner of the stock whose interest is sufficient to be heard on its claim for corporate waste and fraudulent liquidation.

With respect to the Defendants' argument that the FDIC cannot allege that the Defendants controlled or influenced the affairs of Presco or that they owed any duty to the FDIC and, therefore, the corporate waste and fraudulent liquidation claims should be dismissed, the Court concludes differently. First, if the Defendants participated in a transaction they knew to be fraudulent as alleged and took assets of Presco with such notice and with notice that Presco received no consideration, then their participation was certainly not bona fide and they are not beyond the reach of equity. *Curran v. Arkansas, supra; Spokane Merchant's Association v. Lobe, supra;* and *Jarrett v. Green,* 230 N.C. 104,

52 S.E.2d 223 (1949). Second, although there existed no direct duty on the part of the Defendants to the FDIC concerning the affairs of Presco, if the Defendants purchased assets which were fraudulently misappropriated by Kerr in breach of his fiduciary duty and had notice of that breach, as alleged, and rendered substantial assistance to Kerr therein, then they may be held liable in connection with that fiduciary violation. *Terrydale Liquidating Trust v. Barness,* 611 F.Supp. 1006 (S.D.N.Y.1984).

Concerning the latter point, the Defendants argue that the FDIC's claims do not sufficiently allege the elements of knowledge and substantial assistance. The FDIC contends, on the other hand, its interest was protected in the early drafts of the purchase agreement between Kerr and the Tuscarora Defendants, but were eliminated later; that Gorham and the Tuscarora Defendants induced and paid for the transfer of the controlling interest of Presco from Watkins and Adams for Kerr's unlawful purposes; that BACC took money which was an asset of Presco for a personal obligation of Kerr with notice of Kerr's breach of fiduciary duty and without any consideration going to Presco; and that the Defendants knew that the FDIC was receiving nothing in protection of its interest. In light of the fact that a considerable amount of discovery is yet to be completed, the Court cannot say that, in accepting the allegations of the Second Amended Complaint as true, the FDIC will be unable to prove any facts in support of its claim of corporate waste and fraudulent liquidation.

Furthermore, the allegations of corporate waste and fraudulent liquidation are sufficient under Fed.R.Civ.P. 9(b) in that the circumstances constituting fraud have been pleaded with sufficient particularity to fairly apprise the Defendants of what it is they must respond to. Further, in reading Rule 9(b) with Rule 8(a), particularized allegations of fraud should "still be as short, plain, simple, concise and direct as is reasonable under the circumstances." C. Wright, *Handbook of the Law of Federal Courts,* § 68 (4th ed. 1983); *Gilbert v. Bag-*

*ley,* 492 F.Supp. 714, 726 (D.C.N.C.1980). It is unnecessary to restate each allegation of the Complaint to so conclude, since a careful reading reflects sufficiently particularized allegations of fraud for purposes of Rule 9(b).

■ The Court reaches the same conclusion with respect to BACC's claim that the FDIC's allegations are insufficient for a claim of unjust enrichment. Unjust enrichment of a person occurs when he has acquired property of another through fraud, breach of duty or some other circumstances which make it inequitable for him to retain it. *Wilson v. Development Co.,* 276 N.C. 198, 211, 171 S.E.2d 873 (1969). The FDIC alleges that BACC's agent was present at the January 30, 1985 closing and knew that Kerr's debt, not Presco's was being paid by the transfer of the funds to BACC, knew that Kerr was acting in violation of his fiduciary duties and gave no fair consideration to Presco. Thus, the FDIC contends BACC was a taker of funds with notice and without giving fair consideration and, therefore, the FDIC is entitled to restitution. The allegation of the Second Amended Complaint on this issue are sufficient under Rule 9(b).

With respect to BACC's contention that the allegations of the Second Amended Complaint are insufficient to support a claim for punitive damages against BACC, the Court believes that such contention is misplaced since nowhere in the Second Amended Complaint does the FDIC seek to recover punitive damages from BACC. The remaining Defendants do not raise the issue but if they did the Court would conclude in favor of the FDIC because allegations of fraudulent and deceitful dealings are sufficient to support a claim for punitive damages. *Newton v. Insurance Co.,* 291 N.C. 105, 229 S.E.2d 297 (1976).

## FED.R.CIV.P. 23.1

Defendants also argue that the FDIC's derivative claims on behalf of Presco should be dismissed because the FDIC has failed to comply with Fed.R.Civ.P. 23.1 in that the Second Amended Complaint is (1) not verified, and (2) does not allege any efforts by the FDIC to obtain action from any director or shareholder of Presco or to state why such efforts would be futile.

■ The FDIC contends that because their lawsuit is predicated upon federal rights, the requirement of verification does not exist. The FDIC cites 3B *Moore's Federal Practice,* ¶ 23.1.15[1] for that proposition, but a further reading of that same section indicates that, regardless of the jurisdictional basis, careful practice dictates that the rule be complied with. On the other hand, where a complaint containing derivative claims lacks valid verification, dismissal is not necessarily warranted if subsequent events demonstrate that the objectives of verification have been satisfied; and, even if dismissal is granted, it should be done so "with leave to replead or conditioned on a failure to cure the defect within a reasonable period of time" in light of the liberal pleading standards of the federal rules. 7A C. Wright & D. Miller, *Federal Practice & Procedure: Civil* § 1827 (1972). The verification requirement protects against widespread abusive derivative actions and ensures that truthfulness in pleading be attended to. *Surowitz v. Hilton Hotels. Corp.,* 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966). In the present case, the Court is of the opinion that these objectives have been demonstrated by the FDIC. Nonetheless, the FDIC should cure this defect in order to meet the technical requirements of Rule 23.1.

■ Also under Rule 23.1, the FDIC is required to allege efforts made to secure intracorporate action or the reasons for not making the effort. However, if the Court agrees that a demand for intracorporate action would have been futile it may excuse its failure. *Galef v. Alexander,* 615 F.2d 51 (2d Cir.1980). Such is the case here. As with the verification requirement, however, the FDIC should amend its Second Amended Complaint to state its reasons for not making the effort.

CONCLUSION

The Court has considered the other matters raised by the Defendants, including Watkins' assertion that his good faith reliance upon advice of counsel precludes liability, Watkins' motion for sanctions and attorney's fees pursuant to Fed.R.Civ.P. 11, and a Supplemental Memorandum in support of the Motion to dismiss of the Tuscarora Defendants, Ellett, and Gorham. Watkins' good-faith defense is not ripe for consideration on motions to dismiss pursuant to Rule 12(b)(6); the Court is of the opinion that the FDIC's Complaint does not so lack any objective basis in fact or law as to warrant the imposition of attorney's fees and, therefore, Watkins' Motion for Rule 11 sanctions should be denied; and the supplemental memorandum of the Tuscarora Defendants, Ellett, and Gorham brings up an interesting point as to the FDIC's apparent inconsistent posture in responding to discovery requests but does not persuade the Court to change its conclusion with regards to the jurisdiction issue.

IT IS, THEREFORE, ORDERED that:

(1) Defendants' Motions to dismiss are hereby DENIED, except with respect to the FDIC's claim for Defendants' violations of the Travel Act which is hereby DISMISSED;

(2) The FDIC shall amend the RICO claim in its Second Amended Complaint to more specifically reflect which Defendants allegedly did what with respect to the commissions of the alleged predicate acts of mail fraud, wire fraud, and securities fraud;

(3) The FDIC shall cure its defects in pleading under Fed.R.Civ.P. 23.1 by filing a verification of its Second Amended Complaint and by further amending its Second Amended Complaint to demonstrate why it made no effort to secure intracorporate action; and

(4) Watkins' Motion for Rule 11 sanctions and imposition of attorney's fees is hereby *DENIED*.