**SUPERGUIDE CORPORATION,**
Plaintiff,

v.

**Daniel KEGAN, d/b/a Elan Associates, Defendant.**

**No. CIV. 4:97CV181.**

United States District Court,
W.D. North Carolina,
Shelby Division.

Oct. 8, 1997.

---

motions in the captioned civil action and to submit to this Court recommendations for the disposition of these motions.

On July 29, 1997, the Magistrate Judge filed a Memorandum and Recommendation in this case containing proposed findings of fact and conclusions of law in support of a recommendation denying Defendant's motion to dismiss. Defendant timely filed objections to the Memorandum and Recommendation. Thereafter, on September 25, 1997, this Court heard arguments on the motion by counsel.

After a *de novo* review of the pleadings, the Magistrate Judge's Recommendation, and after hearing argument on the motion to dismiss, the Court finds that the proposed findings of fact contained in the Memorandum and Recommendation are supported by the record and that the proposed conclusions of law are consistent with current case law. Accordingly, the Court hereby accepts the Magistrate Judge's Recommendation that the Defendant's motion to dismiss be denied.

**IT IS, THEREFORE, ORDERED** that Defendant's motion to dismiss is hereby **DENIED.**

## MEMORANDUM AND RECOMMENDATION

COGBURN, United States Magistrate Judge.

**THIS MATTER** is before the court upon defendant's Motion Pursuant to Rules 12(b)(1), (2) and (3) to Dismiss for Lack of Subject Matter Jurisdiction, Personal Jurisdiction, and Venue. Having carefully considered that motion and reviewed the pleadings, including plaintiff's response, the undersigned enters the following findings, conclusions, and recommendation.

### FINDINGS AND CONCLUSIONS

**I. Background**

Defendant is the registered owner of the federally registered trademark MACGUIDE, which mark is used in connection with computer-oriented publications and a number of goods and services related to the personal computer marketplace. Using the mark "Su-

Julian H. Wright, Robinson, Bradshaw & Hinson, P.A., Charlotte, NC, Marc Morris, Gary J. Nelson, Christie, Parker & Hall, Pasadena, CA, for Plaintiff.

W. Thad Adams, III, John S. Evans, W. Thad Adams, III, P.A., Charlotte, NC, Daniel Kegan, Diane Lidman, Marc Fineman, Kegan & Kegan, Chicago, IL, Jeffrey J. Schwartz, J. Scott Evans, Adams Law Firm, P.A., Charlotte, NC, for Defendant.

### ORDER

THORNBURG, District Judge.

Pursuant to 28 U.S.C. § 636(b) and the standing Orders of Designation of this Court, United States Magistrate Judge Max O. Cogburn, Jr., was designated to consider pending

perGuide," plaintiff is engaged in the business of providing customers with satellite television programming information, which is delivered to the customer's television set through satellite communications, all under the name of "SuperGuide." Plaintiff's products include remote control units, television signal receivers, interface boxes, and interface cables, all marketed under the mark "SuperGuide." In short, plaintiff appears to provide the electronic equivalent of "TV Guide" to its satellite customers.

Since January 1994, plaintiff has sought federal registration of its trademark "Super-Guide" with the United States Patent and Trademark Office ("PTO"). In January 1996, the PTO published the SUPERGUIDE mark for opposition. Upon learning of the proposed registration, defendant secured several extensions of time to file opposition to the registration. As part of its application process, plaintiff identified the goods with which such mark would be associated to include "computer programs for use with television listings and related communications accessories, namely, remote controls, integrated satellite receivers, electronic interface boxes and electrical interface cables." *See* Defendant's Exhibit 9.

On November 18, 1996, defendant filed his Notice of Opposition, in which he alleged that the proposed mark was likely to cause confusion, mistake, or deception with his federally registered mark MACGUIDE and that he would be damaged by the proposed registration. In subsequent communication between plaintiff and defendant (which appears to be a partial basis for filing this suit), defendant informed plaintiff that he took issue with the proposed registration due to the reference in the description for use of SUPERGUIDE in relation to any computer goods or services. Defendant demanded that such reference be deleted, even if that change meant withdrawal of the application.

Plaintiff answered the opposition in January 1997, and in February 1997, the Trademark Trial and Appeal Board set trial dates for the opposition. Administrative discovery was commenced, and a few days before its discovery responses were due on the interrogatories, requests for production, and requests for admission, directed to whether the mark SUPERGUIDE had ever been used on computer programs, plaintiff filed this declaratory relief action.

## II. Discussion

Defendant seeks dismissal and contends that (1) this court lacks jurisdiction over the subject matter of this suit, (2) personal jurisdiction cannot be asserted over him because he has not had the minimum contacts, and (3) even if the court had subject matter and personal jurisdiction, venue would be more appropriate in the Northern District of Illinois, where he resides. Defendant's contentions will be discussed *seriatim.*

### A. Subject–Matter Jurisdiction

█ In the context of a declaratory relief action, defendant's Motion to Dismiss under Rule 12(b)(1) raises the issue of whether an actual case or controversy existed between the parties at the time suit was filed. Such an inquiry is of particular importance in declaratory relief actions in light of the time-tested mandate that federal courts avoid "advisory opinion." Where a declaratory relief action involves trademarks, the test for an "actual case or controversy" has two prongs:

(1) whether defendant's conduct created a real and reasonable apprehension of liability on the part of plaintiff; and

(2) whether plaintiff engaged in a course of conduct which has brought it into an adversarial conflict with the defendant.

*Windsurfing Intern., Inc. v. AMF Inc.,* 828 F.2d 755, 757–58 (Fed.Cir.1987).

█ As to the first prong, defendant contends that his filing an opposition to an application with the PTO office and vigorously policing his registered mark are insufficient to satisfy this prong. In response, plaintiff contends that it has a real and reasonable apprehension of liability based on defendant's filing of requests for extension of time with the PTO, the ultimate filing of an opposition to plaintiff's application with the PTO, thinly veiled threats of litigation contained in carefully worded correspondence and accompanying enclosures, and defendant's litigious history in policing its mark.

484

■ In an initial letter to plaintiff's counsel, defendant stated that the "enclosed documents present a slice of evidence supporting Elan's concern over Super Guide's federal registration of SUPERGUIDE for computer programs.... The MACGUIDE federal trademark registration is incontestable." Enclosed with that letter were a copy of defendant's trademark on the principal register for MACGUIDE and excerpted settlement agreements with big-name computer companies agreeing not to further infringe defendant's mark in exchange for avoiding litigation. A reasonable apprehension of suit can arise indirectly, as in this case, without an overt and express threat. *Texas v. West Pub. Co.*, 882 F.2d 171, 177 (5th Cir.1989). In further support of its argument, plaintiff has listed 14 different instances of defendant vigorously policing its mark through litigation, filing for extension of time to oppose, and actual oppositions to proposed registrations.

The undersigned finds that the actions of defendant, when taken in combination, would lead a reasonable person to believe that failure to fold his or her tent quickly would result in exposure to a action for trademark infringement. The first prong appears to be satisfied.

The second prong focuses on plaintiff's actions, rather than defendant's, by asking whether plaintiff has engaged in a course of conduct which has brought it into an adversarial conflict with defendant. In this case, defendant argues that this prong cannot be satisfied because plaintiff has not yet applied the trademark SUPERGUIDE to computer goods. Indeed, he argues that this action was brought by plaintiff just days before administrative discovery was due that would have shown that plaintiff has never made use of that trademark in association with computer goods either prior to its application for registration or subsequent thereto. Plaintiff argues that the very nature of its business, *i.e.*, the supplying of television program information via satellite, requires use of computers, computer programs, and computer related products.

■ This controversy is similar to the one discussed in *Starter Corporation v. Converse,*

*Inc.*, 84 F.3d 592, 38 U.S.P.Q.2d.1947 (2d Cir.1996). In that case, Converse contended that Starter's declaratory relief action was premature because it had not yet used the disputed mark on goods. Starter argued that actual use was not the test, and that the "imminent intention and ability" test was applicable. Adapted from patent law, the imminent intention and ability test provides, as follows:·

> [A]n actual case or controversy exists where a party has engaged in a course of conduct evidencing a "definite intent and apparent ability to commence use" of the marks on the product.

*Id.*, at 595–96 (citation omitted).

In this case, plaintiff asserts in its complaint that it is entitled to use the SUPERGUIDE mark in association with its goods and services, which include computer programs and computer related products. As demonstrated by the exhibits annexed to the complaint, plaintiff or its predecessor in interest has used the SUPERGUIDE mark since 1986 in marketing its program guide service to satellite television users. A reasonable inference which can be drawn from the complaint is that plaintiff has used the mark on "goods," including remote controls and other electronic hardware, it either sells, rents, or provides to subscribers who use its service. Whether SUPERGUIDE software or computers (whether that term means PCs, mainframes, or the little ones found in electronic fuel injection systems) are now or will in the future be distributed or sold is not discernable from the pleadings now before the court. While it is plaintiff's burden to establish facts supporting the jurisdiction it attempts to invoke, the allegations of the complaint must, at this time,· be taken as true, and the assertion by plaintiff in its complaint that the mark is used in connection with computer programs and related goods must be fully credited. Although not a remedy for all ills, the purpose behind the Declaratory Judgment Act must also be considered:

> [P]ersuasive in considering this test is the policy animating the Declaratory Judgment Act, which is to enable parties to adjudicate their disputes before either suf-

fers great damage. Declaratory judgment actions are particularly useful in resolving trademark disputes, in order to promptly resolve controversies where the alleged owner of a trademark threatens to sue for infringement. Accordingly, in such a case, the finding of an actual controversy should be determined with some liberality.

*Id.,* at 596. The undersigned finds that plaintiff, by providing computer related goods and services utilizing the trademark SUPERGUIDE, has engaged in a course of conduct which has brought it into an adversarial conflict with defendant. Finding that both prongs have been satisfied, the undersigned is compelled to recommend that defendant's Motion to Dismiss under Rule 12(b)(1) be denied.

## B. Rule 12(b)(2): Personal Jurisdiction

### 1. Standard

Defendant has moved for dismissal pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure, and contended that assertion by this court of personal jurisdiction of him is inappropriate. Rule 12(b) authorizes dismissal based on a dispositive issue of law. *Neitzke v. Williams,* 490 U.S. 319, 325–27, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). As the Court discussed in *Neitzke:*

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts ... a claim must be dismissed, without regard to whether it is based on outlandish legal theory.... What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

*Id.,* 490 U.S. at 326–27, 109 S.Ct. at 1832 (citation omitted). For the limited purpose of ruling on defendant's motion, the court has accepted as true the facts alleged by plaintiff in the complaint and will view them in a light most favorable to plaintiff.

### 2. Personal Jurisdiction

At the constitutional level, whether or not to exercise jurisdiction over a defendant is a question of fairness. *International Shoe Co. v. Washington,* 326 U.S. 310, 317–20, 66 S.Ct. 154, 158–60, 90 L.Ed. 95 (1945). Determining what is fair, however, requires review of the quantity and quality of the defendant's contacts with the forum state. Constitutional concerns only arise where jurisdiction is allowed pursuant to a state's long-arm statute. As the Court of Appeals for the Fourth Circuit has held:

> [W]hen evaluating the propriety of jurisdiction obtained pursuant to a long-arm statute, a two-step analysis is normally required. First, we must determine whether the statutory language applies to the defendant; second, if the statutory language applies, we must determine whether the statutory assertation of jurisdiction is consistent with the due process clause of the Constitution.

*English & Smith v. Metzger,* 901 F.2d 36, 38 (4th Cir.1990) (citation omitted).

In considering defendant's Motion to Dismiss, analysis begins with the two-step approach furnished by the circuit court. The North Carolina Supreme Court has held that the state's jurisdictional statute applies to defendants who meet the minimal contacts requirement of *International Shoe Co. v. Washington, supra. See Dillon v. Numismatic Funding Corp.,* 291 N.C. 674, 231 S.E.2d 629 (1977); *see also Western Steer–Mom 'N' Pops v. FMT Invs., Inc.,* 578 F.Supp. 260, 264 (W.D.N.C.1984). The two-pronged approach approved by the circuit in applying the Virginia statute, "collapses into the question of whether (the Defendants have) the minimum contacts with North Carolina." *Fieldcrest Mills, Inc. v. Mohasco Corp.,* 442 F.Supp. 424, 426 (M.D.N.C.1977).

There are five factors used in determining whether the long-arm statute and minimum contacts have been satisfied:

(1) quantity of the contacts;

(2) nature and quality of the contacts;

(3) source and connection of the cause of action to the contacts;

(4) interest of the forum state; and

(5) convenience.

*Western Steer–Mom 'N' Pops v. FMT Invs., Inc., supra*, at 264; *see Fieldcrest Mills, Inc. v. Mohasco Corp., supra*, at 427; *see also* N.C. Gen.Stat. § 1–75.4(5) (North Carolina long-arm statute). The burden is on plaintiff to establish that the long-arm statute provides for jurisdiction over this defendant. *Marion v. Long*, 72 N.C.App. 585, 325 S.E.2d 300, *cert. denied*, 313 N.C. 604, 330 S.E.2d 612 (1985). The materials and arguments submitted by plaintiff will be reviewed in light of the five considerations found in *Western Steer–Mom 'N' Pops v. FMT Invs., Inc., supra, seriatim.*

■ In this case, the only alleged contacts concern defendant's use of the Internet. Unlike traditional telephone solicitation, the commercial side of the Internet provides businesses with a unique opportunity to reach customers in a passive manner. Similar to a fisherman on the bank with his line in the water, a website is established, a product is offered, and the business waits for customers.

The jurisdictional problems presented by commercial activities on the Internet are of recent origin, and the case law has yet to mature. In *Resuscitation Technologies, Inc. v. Continental Health Care Corp.*, 1997 WL 148567 (S.D.Ind. Mar.24, 1997), the district court held:

> To transact business in this day of instantaneous interstate electronic transmissions does not require a defendant to have physically entered this state. In fact, in modern commercial life, "it is inescapable fact ... that a substantial amount of commercial business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence...."

*Id.*, at 4 (citations omitted; quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985)). The court went on to find, however, that "one or two inquiries about some Indiana goods or services would not support local jurisdiction." *Id.*, at 6. Unfortunately, no one has identified the number of "hits" defendant's website(s) have generated from North Carolina, how many MACGUIDE credit cards he has issued to North Carolina users, or how many MACGUIDE products he has sold in this state, which makes it difficult to determine the "quantity and quality" of defendant's contacts with this state. The undersigned, therefore, has assumed that such information is unavailable at this time, but that a reasonable inference would be that a large number of North Carolina residents have visited defendant's website, a number of those visitors have utilized defendant's commercial services, and some have even obtained MACGUIDE credit cards. Having made that assumption, it appears to the undersigned that those contacts accrued to the commercial benefit of defendant, they were made under the trademark MACGUIDE, and the Internet contacts are directly related to the subject matter of this suit.

■ The North Carolina long-arm statute specifically requires "substantial activity" within the state. N.C. Gen.Stat. Section 1–75.4(1)(d) (1989). Contacts with a state should be viewed together, not in isolation. *Hirschkop & Grad. P.C. v. Robinson*, 757 F.2d 1499, 1503 (4th Cir.1985). Viewed together, the Internet contacts amount to substantial activity within the State of North Carolina, and the nature of those contacts is related to the Declaratory Relief Act claim asserted by plaintiff. There exists a nexus between the contacts and the source of the action.

■ The intent of the North Carolina long-arm statute is to assert *in personam* jurisdiction to the full extent permitted by the Due Process Clause of the United States Constitution. *Kaplan School Supply Corp. v. Henry Wurst, Inc.*, 56 N.C.App. 567, 289 S.E.2d 607, *cert. denied*, 306 N.C. 385, 294 S.E.2d 209 (1982). There is a mandate that the North Carolina long-arm statute be given liberal construction, thereby favoring the finding of personal jurisdiction. *F.D.I.C. v. Kerr*, 637 F.Supp. 828 (W.D.N.C.1986). As exhibited in the long-arm statute, North Carolina has a substantial interest in the execu-

tion of contracts within this state, promises of services to be rendered in this state, solicitation of business within the state, and goods or intellectual property being licensed or sold to corporate residents of the state. *See* N.C. Gen.Stat. §§ 1–75.4(5)(a), *et seq.* The State of North Carolina, as do all states, has a keen interest in the protection of trademarks owned by its residents. *See Akro Corp. v. Luker,* 45 F.3d 1541 (Fed.Cir.1995).

Whether the travel required in this case will be by or on behalf of defendant from Illinois to North Carolina or plaintiff from North Carolina to Illinois, the court is aware of the considerable distance involved. This district's requirement of local counsel could, and apparently has, eliminated much of the inconvenience of travel on behalf of defendant. Considering all of the factors, the long-arm statute of North Carolina has been satisfied.

Plaintiff having satisfied the requirements of North Carolina's long-arm statute, the court's focus shifts to whether exercise of that jurisdiction over defendant would "offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). The question is not whether the contacts predominate, but whether "enough minimum contacts exist that the district court's assumption of specific jurisdiction satisfied due process." *English & Smith v. Metzger, supra,* at 39.

> The "fair warning" requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from the alleged injuries that "arise out of or relate to" those activities.

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985).

As discussed *supra,* the alleged injuries complained of by plaintiff, while not "arising out" of defendant's contacts in this state, relate directly to the activities of defendant in this state in the use and promotion of its MACGUIDE mark. If, as defendant has contended in his administrative opposition,

the use of the SUPERGUIDE mark is likely to confuse consumers who use MACGUIDE, it stands to reason that a good number of those consumers reside in North Carolina. When considered alongside other materials presented, the conclusion that North Carolina's long-arm statute reaches defendant and that traditional notions of fair play are not offended is unavoidable. Defendant appears to have purposely directed activities towards residents of the State of North Carolina. While the number of hits to defendant's website originating in North Carolina is not now before the court, a reasonable inference which arises is that such are numerous inasmuch as North Carolina is one of the populated states; however, should discovery reveal that the hits from North Carolinians are insubstantial, the jurisdictional issue may be revisited. Fed.R.Civ.P. 12(h)(3). The contacts were sufficient to have led defendant to "reasonably anticipate being haled into court" in North Carolina. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The undersigned determines that this court has jurisdiction over defendant and that the exercise of that jurisdiction would not offend traditional notions of fair play or substantial justice. The undersigned will recommend to the district court that defendant's Motion to Dismiss for lack of *in personam* jurisdiction be denied.

**C. Rule 12(b)(3): Venue**

Finally, the undersigned finds that while not exclusive, venue is properly laid in the Western District of North Carolina. Defendant argues that under 28, United States Code, Section 1391(a), venue is not appropriate in this district because his acts giving rise to this action occurred in Illinois and Virginia; the property that is the subject of this case—plaintiff's trademark application—is located at the PTO in Virginia; and he is not in North Carolina. Defendant has relied on the wrong paragraph of Section 1391, inasmuch as 1391(a) only applies to civil actions "wherein jurisdiction is founded only on diversity of citizenship...." By submitting a complaint containing claims under the Declaratory Relief and Lanham Act and for

Abuse of Process, plaintiff has invoked the federal question and supplemental jurisdiction of this court, not the court's diversity jurisdiction.

 Section 1391(b) applies and provides that where a civil action is "not founded solely on diversity of citizenship," it may be brought in "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. . . ." It appears to this court that plaintiff is a corporate resident of the State of North Carolina and that a substantial number of its corporate activities which may give rise to a cause of action under the Lanham Act have occurred and continue to occur within the Western District of North Carolina. Venue is properly laid, and the undersigned will recommend that defendant's Motion to Dismiss pursuant to Rule 12(b)(3) be denied.

### RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendant's Motion Pursuant to Rules 12(b)(1), (2) and (3) to Dismiss for Lack of Subject Matter Jurisdiction, Personal Jurisdiction, and Venue be **DENIED.**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within ten (10) days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *United States v. Schronce,* 727 F.2d 91 (4th Cir.), cert. *denied,* 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).

This Memorandum and Recommendation is entered in response to defendant's Motion Pursuant to Rules 12(b)(1), (2) and (3) to Dismiss for Lack of Subject Matter Jurisdiction, Personal Jurisdiction, and Venue (# ——).